## STEBBINS *vs.* THE PHENIX FIRE INSURANCE COMPANY.

Where, by the charter of an incorporated company, the corporation [has a lien upon the stock of a debtor for the payment of his debt, stock which actually belongs to such debtor, though it stands upon the books of the company in the name of a fictitious person, is subject to the lien.

If the charter or an authorized by-law of the corporation provides that no transfer or assignment of stock shall be valid, unless made on the books of the company, an individual obtaining an assignment of stock from the apparent owner, but which assignment is not intimated on the books of the company, takes it subject to all the equitable rights of the company against the real owner thereof.

If the officers of the company knowingly permit stock to be transferred to a mere nominal holder, and issue the scrip in his name, so as to make him the apparent owner, it seems that a bona fide purchaser of the stock from such apparent owner, even without a transfer on the books of the company, will be entitled to relief against the lien of the company for a debt due from the real owner.

Where a legal transfer of stock can be made only upon the books of the company, a person who gets an assignment of stock without such a transfer, obtains only an equitable title to the stock, which cannot prevail against a prior equity.

May 28. THE bill in this cause was filed to compel the defendants to permit a transfer to be made to the complainant, who was the cashier of the New-York Chemical Manufacturing Company, of twenty shares of the capital stock of the Phenix Fire Insurance Company, standing upon the books of the defendants in the name of James Donaldson; and also for the payment of the dividends which had accrued on such stock. The cause was heard on bill and answer, and the facts as admitted or stated in the answer were as follows: The stock belonged to Charles Mowatt previous to the 19th of May, 1825, and was on that day transferred by him on the books of the company

to the name of James Donaldson, as a mere fictitious person, to enable Mowatt, and others who were concerned with him in the deception, to place the name of such fictitious person on their list of directors to be chosen as directors of the corporation at its charter election. A certificate was accordingly issued, signed by the president and secretary of the company and delivered to Mowatt, in which it was stated that there were standing in the name of James Donaldson, on the books of their company, twenty shares, transferrable only upon the surrender of the certificate, and on the books of the company. Mowatt, as president of the company, without authority and in violation of his duty, afterwards appropriated the corporate funds to his own use, to the amount of $85,000 ; upwards of $45,000 of which was still due and not secured to the company. On the 27th of July, 1825, and after he had thus appropriated the funds of the defendants to his own use, Mowatt found a person by the name of James Donaldson, and obtained from him a blank assignment, and blank power of attorney to transfer the shares standing in that name on the books of the company. In July, or August, 1826, Mowatt being then indebted to the New-York Chemical Manufacturing Company, filled up the assignment and power with the name of the complainant as assignee, and inserted the name of B. P. Melick therein as the attorney to transfer the stock, and delivered the same to the complainant in payment of, or as security for that debt.

The defendants refused to permit the stock to be transferred under this assignment and power, and refused to pay over the dividends to the complainant ; insisting that they had a lien thereon for the debt due to them from Mowatt.

*W. T. McCoun*, for the complainant. The Phenix Fire Insurance Company, it appears, made by-laws regulating the mode or manner in which transfers of stock were to be made ; but its by-laws do not and could not provide for or create a lien. The lien is given by the statute only ; and by the terms of the statute, the claim or demand of the company must exist against the "stockholder," in order to authorize it to withhold or prevent the transfer. The stockholder must be the person indebted to the company.

Who, in the present case, was the stockholder? Most certainly James Donaldson. For whatever may be the equities, or the rightful ownership, as between Mowatt and Donaldson, the defendants have by their own act made Donaldson the stockholder. They have vested the legal title in him, by issuing the certificate of the 19th May, 1825, in his name, and entering his name in their books as the owner. They have thereby recognized and adopted him as the stockholder, and are concluded by it. So held in *Kane* v. *Bloodgood*, (7 *John. C. R.* 108, 109, 132.) The charter of this company knows of no other persons, as stockholders or owners of stock having authority to assign or pledge or vote on it, except those who appear on their books as stockholders. And in this instance, if the defendants intended to have these shares pledged or bound as a security for Mowatt's debt, they ought to have procured some order or assignment from Donaldson; and should not have permitted Mowatt to hold him out to the world by their books and by their certificate as absolute owner of the stock. It is contrary to every principle of justice to permit the defendants to avail themselves of the pretext of some secret trust between Donaldson and Mowatt, to defeat the rights of third persons dealing with that stock on the credit of the legal title, as declared by the defendants themselves. It is to be observed that there is no allegation or pretence that the defendants have any equitable lien in this case. As for instance, that the debt owing by Mowatt was contracted in the purchase of this stock, or upon the credit of it, or that it was pledged by Mowatt as security. On the contrary, they put themselves upon their strict legal rights, according to the provision contained in their charter. And if they do not bring themselves within the letter, it will not avail them.

I propose to show, 1. That liens of this description for a general indebtedness, conferred by statute in favor of incorporated companies, are in derogation of the common law rights of stockholders, and are therefore to be construed strictly. Liens in law are of two kinds; particular and general. A particular lien is where money or labor has been expended on the identical article or property in possession. These are favored by the courts. (1 *Atk.* 228. *Amb.* 252.) General liens are claimed in respect of a general balance. "These are viewed

by the courts with a stern and watchful jealousy." (12 *Petersdorf*, 255, *n.*) There can be only one construction of a contract, or of a usage, whether creating a lien or not, both in a court of law and a court of equity. (*Gladstone* v. *Birley*, 2 *Meriv.* 401.) Equity, therefore, will go no further in construing or extending a lien strictly legal, than a court of law. Liens in equity, or equitable liens, so called, of which courts of equity alone take cognizance, are of course an exception. I have already shewn that the lien claimed in the present case is not of the latter description. At common law, and independent of any statutory provision, the company would have no right to prevent the transfer of the stock on account of the stockholders' indebtedness. In the case of *Meliorucchi* v. *The Royal Exchange Assurance Company*, (1 *Eq. Cas. Abr.* 9, *pl.* 8,) the assignees of a bankrupt filed a bill against the Royal Exc. Assurance Co. to compel them to assign shares in their stock worth £10,000 or £12,000. The defendant insisted that the bankrupt being one of the directors of the company, had, after the purchase of his stock, borrowed of the company £12,000, and that they ought not to let him transfer, without payment of the £12,000 ; and they claimed this by virtue of the 5th Geo. I., (allowing a set off in cases of bankruptcy, and declaring the balance only to be the actual debt.) But it was decreed at the rolls, and that decree, on appeal, was affirmed by the lord chancellor, that the defendants ought to permit the assignees to transfer and dispose of the stock ; and that the company could not stop or retain the stock for their satisfaction, either before, or by virtue of the 5th Geo. I. I would refer also, as elucidating this doctrine, to *Gibson* v. *Hudson Bay Co.* (1 *Str.* 645 ; 7 *Viner's Abr.* 125, *pl.* 2.) We have, however, cases of our own on this subject, (*Bates* v. *New-York Ins. Co.* 3 *John. Cas.* 238, *Sargent* v. *Franklin Fire Ins. Co.* 8 *Pickering*, 90,) clearly shewing, that insurance companies have no implied lien on the shares of the stock, as security for debts due from the stockholders. The defendants are therefore thrown entirely upon the statute by which they are incorporated ; and I have already shewn they are not within the terms of the provision, with respect to the lien

VOL. III.  45

which they claim, because their debt or demand is not against Donaldson, the stockholder. And even admitting that Mowatt was the rightful owner of the stock, as between him and Donaldson, he had not the possession ; he was not the holder of the shares. He may have held the scrip or certificate, but it was still in the name of Donaldson ; and before it could be reduced into Mowatt's possession, so as to constitute him the stockholder, the ceremony of executing a transfer was at least necessary.

2. Even if the stock belonged to Charles Mowatt, the transfer of it to the name of Donaldson was the act of the defendants, and by their answer it is shewn to have been done for an unlawful and fraudulent purpose. They will not, therefore, be permitted to allege their own wrong, in order to reclaim it. Was not this transaction unlawful, and a fraud upon the stockholders, who were about to elect directors for the year ? The 5th section of their charter requires twenty-one directors to be chosen ; "each of which directors shall at all times during their continuance in office, be stockholders in said company, in their own rights, to the amount of at least 20 shares, and shall be citizens of the United States." Now the allegation is, that James Donaldson was a mere nominal party ; his name was used to fill up the list of directors to 21 ; and the object and intention was to have a name, a man of straw, for the stockholders to ballot for as a director, instead of a real, substantial person, who should be a stockholder in his own right, and a citizen of the United States. Is this to be tolerated ? Perhaps the counsel for the defendants may say that this was the act of Mowatt alone, and that the defendants, as a corporate body, are not to be chargeable with it. The directors of the corporation were fully cognizant of the plan, and connived with Mowatt in the attempt to impose upon the stockholders at their ensuing election, by holding up a spurious ticket, a list of candidates for directors, some of whom had no existence, except in name. And for any thing that appears to the contrary, the plan succeeded, for Mowatt became the president of the company immediately afterwards. Shall the company, under such circumstances, be permitted to avail themselves of the defence that the shares, notwithstanding,

belonged to Mowatt, and that their lien is preserved ? Or shall they not rather be considered as acting in good faith, and as having made or permitted the transfer to James Donaldson, for honest purposes ; such as making him a stockholder in his own right, and rendering him eligible as a director ? If this view is taken of the case, it appears to me the defendants have no right to insist that Mowatt remained the owner or stockholder of the 20 shares in question.

3. As to the title acquired by the complainant. There is no objection to the form or regularity of their title, under the assignment and power of attorney executed by Donaldson ; but it is said by the defendants in their answer, that the Chemical Bank received it only as security for an antecedent debt due to them from Mowatt. Surely this is a sufficient consideration for the assignment. But what have the defendants to do with this question, if they have no legal claim to the stock ? Is it not for them to controvert it with us, in behalf of Donaldson or Mowatt, who alone could make such an objection. But it is said in the answer that the complainant had full knowledge before the assignment of the stock to him, of Mowatt's indebtedness to the defendants, and of their by-laws. What if he had, how does this vary the case ? It was notice merely of Mowatt's indebtedness, and that they had by-laws regulating the mode of transferring stock at their office, and upon their books ; but it is not alleged that the complainant knew, or had notice, that the stock did not belong to Donaldson, or that it belonged to Mowatt, notwithstanding it stood in Donaldson's name. Again ; it may be said, that the answer denies "that the assignment made, or pretended to be made, of said stock by the said Charles Mowatt, or any person by the name of James Donaldson, to the complainant, is valid." Now I apprehend, that whether valid or invalid, is not a matter of fact to be disposed of by a general denial in the answer, but is rather a matter of law, to be judged of and determined by the court, upon the facts and circumstances disclosed, combined with the law of the case. Whether the assignment was fraudulent and void, and intended to deprive the defendants of their lien, is certainly matter of inference, from the facts disclosed, and of law, of which the court are to

judge, and not the defendants themselves. And I contend there is no fact stated, which warrants that inference, or justifies such a conclusion. The defendants had no lien at the time the assignment was made to the complainant, for they had long previously parted with all control over these 20 shares, so far as Mowatt's interest and ownership was concerned, by their own voluntary act. That is, by suffering the transfer to be made to Donaldson, and by issuing the certificate in his name, as the stockholder; more especially since the object was to make Donaldson eligible as a director, who could only be a director in virtue of an absolute ownership in his own right. Have not the defendants, then, to say the least of it, placed themselves in the situation of a person who chooses voluntarily to part with a lien, by which he loses it forever?

The complainant is entitled to a decree for the transfer of these shares free from any claim of the defendants, and to an account of the dividends during the time the stock has been withheld, together with the costs of this suit.

*S. A. Foot & J. L. Graham,* for the defendants. The principles of law applicable to the facts in this cause have been so long settled, and are so well known to the profession and to the court, that it appears to us no valuable purpose can be answered by drawing them into discussion on this occasion. We shall therefore content ourselves with a simple statement of them, so far as it may be necessary to allude to them at all in the course of our remarks.

It is conceded that the defendants have no lien by the common law on the twenty shares of stock in question. It is also conceded that the defendants can create no lien on the stock of their company, as against a stockholder, by a by-law. That all they can do, by the rules and regulations which they are allowed to make on the subject of the transfer of their stock, is to prescribe the mode of enforcing the lien, which the statute gives them on the stock of indebted stockholders. And this probably they cannot do in derogation of any right which is secured to the delinquent stockholder by the written or unwritten law of the state. But as there is no question between the parties respecting the manner of enforcing the lien, the

1832.

Stebbins
v.
Phenix Fire
Ins. Co.

chancellor will not be obliged to trouble himself with that branch of the subject. The defendants place their right to a lien on the twenty shares of stock solely on the section of their act of incorporation which deprives any stockholder against whom the corporation shall have any claim or demand of a right to make any transfer, sale or conveyance of his stock in the corporation, or to receive any dividend thereon until such claim or demand shall be paid, or secured to be paid, to the satisfaction of the board of directors. The cause having, by the election of the complainant, been brought to a hearing by the bill and answer, the facts are to be taken from the statements in the answer, and the inferences which fairly follow from them. Charles Mowatt, being the owner of the twenty shares in controversy, transferred them not to any person in being, but to the mere *name* James Donaldson; and the president and secretary gave a certificate of the transfer, &c. While the shares were standing in that name, Mowatt became indebted to the company in a large sum of money, which is still due, and not secured to the satisfaction of the board of directors. After that debt was contracted, Mowatt procured a man who bore the name of James Donaldson to execute an assignment of the shares to the complainant, to secure a debt which Mowatt then owed the Chemical Bank. This man did execute such assignment, and also a power of attorney authorizing the president of the bank to execute the necessary papers to procure a transfer of the stock. On this assignment and power being presented to the defendants, and a demand made to transfer the stock, they refused; alleging that the stock did not belong to this man Donaldson, but that it belonged to Mowatt who was their debtor.

The only point of enquiry, and the one on which the rights of the parties depend, is, who was the owner of the stock at the time Mowatt's debt was contracted? or, in other words, was Mowatt then the owner or not? This material and decisive question seems to be best answered by putting another: If Mowatt was not then the owner, who was? Will the counsel for the complainant say that this man, James Donaldson, whom Mowatt afterwards looked up to execute the assignment and power, was the owner? If so, he could with equal

propriety say, that when a man conveys a piece of property to James Smith, the title is vested in every James Smith in the world ; or rather, that when Mowatt transferred these shares to the name of James Donaldson, every man in existence by the name of James Donaldson became the owner of them. To meet this view of the subject, the complainant's counsel appears to think that the certificate is decisive evidence that James Donaldson was the owner of the stock from the time it was issued, and that the defendants are concluded by it ; concluded, we suppose he means, from alleging that a man by any other name was the owner. Now the very case which the learned counsel cites for this position, (*Kane* v. *Bloodgood,* 7 *John. Ch. R.* 108, 109, 132,) and at the pages he gives, particularly the last one, shows that a certificate of stock is not conclusive evidence of ownership, even against the company whose officers issue it. And another case, which he cites for a different purpose, (*Bates* v. *The New-York Ins. Co.* 3 *John. Cas.* 238,) shows the same thing. In both of these cases, the court looked at the rights of the parties, and recognized and protected them according to their written contracts ; without reference to the certificates or the time when they were issued. Indeed, it is too clear to be discussed, that the transfer books of a corporation are only prima facie evidence of ownership of the stock ; as the registry of foreign, and the license of domestic tonnage in the books of the custom house are prima facie evidence of the ownership of the vessels. But in each case that evidence is controlled by other or more authentic proof of the ownership of the stock or vessels. Before the passing of the "Act to prevent fraudulent bankruptcies by incorporated companies, to facilitate proceedings against them and for other purposes," (*Laws of* 1825, *p.* 452, *sess.* 48, *ch.* 235, *sec.* 13,) stockholders of companies voted at elections according to the actual ownership of the stock, without reference to the names in which it stood on the transfer books. The 13th section of that act, which declares that the ownership of stock, so far as it regards the right to vote, shall be tested by the transfer book, introduced a new rule ; and so it was understood by the public and the profession. Yet this is not the true way of considering the subject under discussion ; for it assumes that the

1832.

Stebbins
v.
Phenix Fire
Ins. Co.

stock in question was transferred by Mowatt to a person in being. But in fact he merely transferred it to a name, or in other words changed the name, in which, for his own purpose, he chose to have this stock stand on the books of the company; and that is all the certificate purports. The president and secretary of the defendants do not certify that James Donaldson was the owner of the twenty shares of stock, but only that twenty shares stand on their books in the name of James Donaldson.

To make a valid contract for the transfer of the ownership of property, real or personal, there must be a person to transfer, and a person to whom the transfer is made, or nothing passes. Now, in this case, Mowatt transferred to a name, not to a person; of course nothing passed. The ownership remained, and he continued a stockholder as to these twenty shares. So, too, as to obligations. To make a valid one, there must be an obligor and obligee. If there is no obligee, there is no obligation. There is one qualified exception to this rule, and that relates to negotiable paper; in respect to which, for commercial purposes, a note payable to a fictitious person or order, will be held under certain circumstances to be payable to bearer, for the purpose of enforcing the obligations of the real persons on the note, and who became parties to it with a knowledge of the fiction. Suppose Mowatt had transferred these shares to the name John Doe. Would not the James Donaldson, whom Mowatt afterwards looked up to execute the papers, have been just as much the owner of the shares as he was by this transfer to a name which was similar to his own? No one can reasonably doubt it. The conclusion, therefore, amounts to demonstration, that the transfer of these shares by Mowatt, the owner, to the name James Donaldson, did not divest his ownership; and consequently when his debt was contracted, the lien of the defendants attached to these shares.

It is unnecessary to enquire what rights the complainant or his principal, the Chemical Bank, acquired under the assignment and power executed by Donaldson by the procurement of Mowatt. The effect of the transaction probably was, to give

the Chemical Bank, in equity, Mowatt's interest in the shares. But whether it did so or not is immaterial, as the defendants' lien had previously attached. It only remains to notice the observations made by the complainant's counsel. Under his second division, the substance of them is, as nearly as we can gather it, that because the president and secretary issued the certificate shewing that the shares stood in the name of James Donaldson, with a knowledge of Mowatt's object, which was to have a name to put in merely to fill up the list of directors then about to be chosen, the company ought to be deprived of their lien; and of course to be subjected to the loss of the amount of the value of the shares.

The first question which naturally arises from this view of the case is this: Has the complainant, or his principal, the Chemical Bank, been deceived or injured by the issuing of this certificate? Have they parted with any of their funds or property upon its credit? No; for the bank took the stock to secure a prior debt, and if the defendants retain it, the bank is no worse off than it was before. Besides this, the bank took the stock at their peril as to title; and the same peril to which every purchaser is subject, the identity of the person who conveys. The cashier was bound to enquire at his peril, first, whether the stock belonged to James Donaldson; and if it is admitted that the certificate was a reasonable answer to that inquiry, then, second, whether the James Donaldson who offered to transfer it was the James Donaldson who owned the stock. The first step he took in that enquiry would probably have given him the true situation of the stock. But admit that the president and secretary did wrong in issuing the certificate, can it be reasonably contended that the corporation must therefore lose its lien, when no one has been injured by it? There is probably a still more decisive answer to this view of the subject; and it is this: Mowatt being the owner, had a right to transfer the stock to any name, and for any purpose he pleased not prohibited by law. And neither the officers nor the company could sit as *censores morum* over the conduct of Mowatt, and give or refuse him his rights as they should find it fair or otherwise.

THE CHANCELLOR. By the eighth section of the act incorporating the Phenix Fire Insurance Company, (*Laws of* 1823, *p.* 114,) it is provided that the stock shall be assignable and transferable according to such rules, and subject to such restrictions and regulations, as the directors shall establish.. And by the answer of the defendants, it appears that soon after the organization of this company, a by-law was made, and is still in force, by which it is declared that no transfer or assignment of stock shall be valid, unless made on the books of the company. This does not give to the company any claim upon the stock by way of lien. But as the legal title cannot pass until such transfer takes place, a purchaser without such transfer takes the stock subject to any equitable claim which may exist against it either in favor of the company or any other person. Where the equities are equal, and neither party has obtained the legal right to the stock, by an actual transfer upon the books of the company according to the statute and the by-law, the prior equity must prevail. (*Bates* v. *N. Y. Ins. Co.* 3 *John. Cas.* 238.) The case would be entirely different if there was no statute or valid by-law regulating the manner of transferring shares in an incorporated joint stock company ; and where, by the charter, the stock was declared to be assignable. In such a case a simple assignment, intimated to the proper officer of the corporation, although it was not entered on the company's books, would be sufficient to transfer the legal right ; and a bona fide assignee of the stock would hold the same free from any equitable claims thereon of which he had no previous notice. Whether the defendants in this case have any legal or equitable lien upon the stock in question, remains to be considered.

The second clause of the eighth section of the act of incorporation declares, that if the company has any claim or demand against a stockholder, either due or to become due, he shall not be entitled to make any transfer, sale, or conveyance of his stock, or to receive a dividend thereon, until such claim or demand shall be paid or secured to the satisfaction of the board of directors. The answer states in express terms that the stock was merely transferred to the name of J. Donaldson, for

the purpose of having a name to insert in the list of directors ; there being no such person as James Donaldson who was the actual owner of the stock, or to whom such transfer was made. The defendants also deny that the James Donaldson who executed this blank assignment to enable Mowatt to transfer the stock, ever had any interest or property whatever therein. As the complainant has not given the defendants an opportunity to prove these allegations, and has chosen to go to hearing upon bill and answer, the allegations must be taken as literally true. If so, the transfer of these shares to a fictitious person was a mere nullity ; and the legal title never passed from Mowatt. It appears, however, that the officers of the corporation were aware that this was a mere fictitious transfer, and that it was made for the purpose of imposing upon such of the stockholders as were not in the secret. If, therefore, the complainant had actually advanced the money to the person that Mowatt afterwards elected to treat as the owner of the stock, and without notice of the real facts of the case, I am inclined to think he would have had an equitable claim to hold such stock even against the defendants' legal lien. But an assignment for the payment or security of an antecedent debt, and without any new consideration paid, is not sufficient to raise such an equity.

I have no doubt that in equity the lien given by this charter upon the stock belonging to debtors of the company, and upon the dividends thereon, extends to all stock actually owned by such debtors, whether standing in their own names or in the names of other persons as their trustees. But the defendants could not be permitted to enforce that lien against bona fide purchasers of the stock who had no notice of such equitable lien. From the facts disclosed in this answer, I am satisfied the defendants have both an equitable and a legal lien upon the stock in question, for the security of their demand against Mowatt ; and they have also the right to retain the dividends, and to sell the stock in the manner prescribed by the charter to satisfy that claim. A decree must therefore be entered declaring such right ; but allowing the complainant to redeem, if he thinks proper to do so. The complain-

ant, in case he redeems, will be entitled to a transfer of the stock, and to any other securities the defendants may have for their demands against Mowatt. But whether he elects to redeem, or otherwise, he must pay to the defendants their costs in this suit.