## RICHMOND FACTORY ASSOCIATION *vs.* DANIEL CLARKE.
## SAME *vs.* NOAH ALEXANDER.

*Voluntary joint-stock associations—organization of and assessments by.*

Unless the certificate of the attorney-general be obtained as required by R. S., c. 48, § 19, persons associating themselves together under the provisions of that chapter do not become a corporation.

Where a number of persons had signed an agreement to associate themselves together, agreeably to the provisions of R. S., c. 48, for the purpose of erecting a shoe-factory building, and had voted an assessment upon themselves before applying to the attorney-general for his certificate under § 19 of that chapter, and another after such certificate had been refused them; and two more assessments were laid by the officers chosen by them, in accordance with the by-laws they had adopted; and subsequently a portion of those so subscribing had, without the concurrence of the defendant, procured from the legislature an act of incorporation to effectuate the purpose originally contemplated; it was *held,* that the corporation created by this act (Private Laws of 1872, c. 15) could not enforce payment of any of the assessments previously laid against the defendant in the manner aforesaid.

ON REPORT.

The agreement was that upon the report the court should make such disposition of the case as law and evidence required. Induced thereto by exemption from taxation and further aid promised from the town's treasury, thirty-four of the citizens of Richmond, of

whom the defendants in these suits were two, by written articles, subscribed by them, agreed to take stock in a shoe-factory building to be erected in that town, and to form themselves into a joint-stock company for that purpose, as provided in R. S., c. 48, §§ 18, 19, and 20. The capital stock was to be $20,000, divided into shares of $100 each, of which Clark agreed to take, and subscribed for ten shares, and Alexander three shares, " to be paid for in such sums as shall be assessed from time to time by the proper officers of the company." At a meeting of the subscribers, a president, secretary, treasurer, and six directors were chosen ; and at adjournments of this same meeting two assessments were ordered to be made. After the adoption of by-laws, the directors, being thereby empowered so to do, voted to call on the subscribers for a third assessment. A statement, made in pursuance of R. S., c. 48, § 19, was sent to the attorney-general for certification, Sept. 8, 1871, but he declined to certify it, because he thought the statute did not authorize the formation of a corporation in this manner for the purpose specified ; which, it will be noticed, was not the manufacture of shoes, but the erection of a building to be used for that business by others than the builders. Nevertheless, the directors proceeded as if the organization of the company had been perfected, and laid a fourth assessment for the balance of the subscription, and voted to apply to the legislature for an act of incorporation, which they did, and it was granted them, being chapter 15 of the Private and Special Laws of 1872. Seven of the original subscribers were omitted from the act of incorporation, of whom one was Noah Alexander. Daniel Clarke had nothing to do with procuring this act, and he and Alexander refused to pay the several assessments, believing all action, subsequent to the refusal of the attorney-general to certify their statement, to be illegal.

*J. W. Spaulding*, for plaintiff.

Whether or not the town was authorized to pass the votes promising pecuniary aid to the enterprise, and whether or not the stockholders can now hold the town to its engagement, are questions not in controversy here.

Up to the time of requesting the attorney-general's indorsement of our certificate, the proceedings were in strict conformity with the requirements of the law. From his decision there was no appeal, while a delay till the meeting of the legislature would involve great loss and deprive us of the benefit of the votes of the town. The machinery of a corporation *de facto* was all in working order; contracts had been made; money assessed, collected, and expended and in process of collection and expenditure. Numerous meetings of the shareholders were had in which the defendants participated, well-knowing that money was being expended by this *de facto* corporation, upon the faith of their promises as well as of their associates, in the manufacturing of a large, substantial, and beautiful edifice at enormous expense.

All this was done with the expectation and intention of procuring a charter so soon as the legislature met, as all the subscribers well understood. By the act of incorporation all the members of that *de facto* corporation became so of a corporation *de jure*. Their consent thereto may be implied. It is no uncommon thing for the subscription list to be signed before the charter is granted. This must be done in England. *Preston* v. *Dock Co.*, 11 Sims. (34 Eng. Ch.) 328. The principle is the same as if the organization had been perfected under the general law, in which case the subscription must be made before there is any company. *Penobscot R. R. Co.* v. *Dummer*, 40 Maine, 173. A retroactive law is void only when it changes, or attempts to, the rights or liabilities of the parties from what they were intended to be at the time of the alleged contract. *Bryant* v. *Morrill*, 55 Maine, 516; *Hess* v. *Werts*, 4 S. and R. 356.

Without a charter this contract is enforcible in equity. An examination of cases discloses this simple sale or principle; that where an individual is party to an agreement which requires a law to complete and perfect it, with knowledge and a desire on his part that such enactment be procured, and in pursuance of such agreement that law is passed with his knowledge, or without his knowledge, if he afterwards consents thereto by word or deed—then he

is estopped from denying his liability under the original agreement and is bound by it. *Kidwelly Canal Co. v. Raby*, 2 Price (1 Eng. Exch.) 193; *Ellis* v. *Marshall*, 2 Mass. 279; *Johnson* v. *Plank Road Co.*, 16 Ind. 389; *Bedford R. R. Co.* v. *Bower*, 48 Penn. St. 34; *R. R. Co.* v. *Wilson*, 22 Conn. 452; *Valk* v. *Crandall*, 1 Sandf. 179; *Bangor House* v. *Hinckley*, 12 Maine, 387; *Penobscot R. R.* v. *Dummer*, 40 Maine, 173; *Hathorn* v. *Calef*, 55 Maine, 471; *Eastern R. R.* v. *Vaughan*, 20 Barb. 155; *Edinboro' Academy* v. *Robinson*, 37 Penn. St. 210; Aug. and Am. on Corps. 521; *Heuston* v. *Cincinnati R. R. Co.*, 16 Ind. 275; *Selma* v. *R. R. Co.*, 5 Ala. 786; *Griswold* v. *Peoria University*, 26 Ill. 41.

*A. Libbey* and *W. T. Hall*, for defendants.

1. The contract of defendant was to become a member of a corporation, with the other parties who signed the agreement with him to be organized under R. S., c. 48, and to take and to pay for ten shares of the capital stock of the corporation, when so organized. The legal organization of the corporation failed for want of approval of the articles of association by the attorney-general, for the reason that it was not such an organization as the statute authorized.

When the organization of the corporation failed, the defendant's contract, by its terms, ceased to exist, and no longer had any force or effect. Chapter 15, of the acts of 1872, so far as it seeks to make valid this contract, is unconstitutional and void.

When a contract, valid when made, by its terms ceases to have any legal force or obligation, it is not competent for the legislature to make it valid and binding upon the parties to it. Such legislation is in conflict with the constitutions of the United States and of the States, which prohibit the legislature from passing any law impairing the obligation of contracts. *Coffin* v. *Rich*, 45 Maine, 507; *Atkinson* v. *Dunlap*, 50 Maine, 111; *Prop'rs Ken. Purchase* v. *Laboree*, 2 Green. 275; *Sturges* v. *Crowninshield*, 4 Wheaton, 122; *Green* v. *Biddle*, 8 Wheaton, 1; *Ogden* v. *Sanders*, 12 Wheaton, 213; *Hathorn* v. *Calef*, 2 Wall. 10.

2. But the act of 1872 is not merely an act to make valid the organization under the agreement of July 20, 1871. By that agreement the corporation was to be such a one as was authorized by c. 48 of the R. S. By the act of 1872 the parties named in it are constituted a corporation for general purposes, all that a corporation may legally engage in. By the agreement all the parties who signed it were to be members of that corporation. They represented a capital of $18,600. By the act of 1872, seven of the subscribers, representing a subscription of $3,400, were not made members of the corporation.

By the agreement the capital stock was to be $20,000. By the act of 1872 it might be $100,000. By the agreement the organization was to be before January 1, 1872, and the building was to be completed by that time so as to secure the benefit of the votes of the town of Richmond. But the act of 1872 seeks to make the defendant liable by creating a corporation after January 1, 1872, and when it is too late to secure the benefit of the votes of the town.

All this is without any action, approval, or ratification on the part of defendant. It is imposing upon him the obligation of a contract to which he never gave his assent.

3. The case against Alexander stands on the same grounds as that against Clarke, with the further fact that in the act of 1872 he is not made a corporator; yet it is sought to hold him to his subscription. This is absurd.

Appleton, C. J. The defendant, with others, signed on 20th July, 1871, certain articles of agreement by which they agreed to "form themselves into a joint-stock company in the manner provided in chapter forty-eight of the Revised Statutes, under such corporate name and be governed by such by-laws as may be adopted at any meeting of the subscribers" thereto.

They further agreed that the capital stock of the corporation should "be twenty thousand dollars, and be divided into shares of one hundred dollars each," and "to take and pay for in such sums

as shall be assessed from time to time by the proper officers of the company, the number of shares placed opposite " their respective names.

The subscribers to this agreement met, chose their appropriate officers, by whom four assessments were made bearing date, respectively, Sept. 2, Oct. 1, Nov. 21, and Dec. 12, 1871.

On Sept. 8, 1871, the officers of the company prepared a certificate stating that the name of the association was Richmond Factory Association—that it was formed for the purpose " of erecting a boot and shoe factory building" in Richmond—giving the number of shareholders, their place of residence, the names of the directors, made oath to and forwarded the same to the attorney-general, who returned the same with the following indorsement thereon :

"PORTLAND, ME., Sept. 18, 1871.

I return certificate of the Richmond Factory Association without my indorsement, for the reason that I am satisfied after examination and reflection that the statute (c. 48, § 18) does not contemplate or authorize the formation of a corporation for such purpose as is specified in the certificate.

Yours truly,       T. B. REED, A. G."

There being a failure to organize under R. S., c. 48, §§ 18, 19, and 20, application was made to the legislature for a charter, and certain of the individuals who had signed the agreement of July 20, 1871, were, by an act approved January 26, 1872, created a body corporate by the name of the Richmond Factory Association. The name of the defendant was included in the list of corporators, but he personally took no part in procuring the act nor in the proceedings subsequent to its passage.

The corporators named in the act (the defendant excepted) proceeded to organize under their charter, chose the usual officers, but made no assessments.

This action is brought to recover the assessments made under the first attempt at organization—one of which assessments was made prior to the refusal of the attorney-general to indorse the

certificate, and three after such refusal; but all were made before the passage of the act under which the plaintiff corporation was organized.

We think the action is not maintainable.

By R. S., c. 48, § 19, before commencing business, the president, treasurer, and a majority of the directors are to prepare a certificate setting forth the name and purposes of the corporation, the amount of capital stock, the amount already paid in, the par value of the shares, the names and residences of the owners, the name of the county where located, and the number and names of the directors—and shall sign and make oath to it. After it has been examined and certified by the attorney-general, it shall be recorded in the registry of deeds in the county where the business is to be done, and a copy, certified by such register, shall be filed in the office of the secretary of State, and he shall enter the date of filing thereon.

By § 20, " from the time of filing such certificates in the secretary of State's office, the signers of said articles and their successors and assigns shall be a corporation, the same as if incorporated by a special act, with all the rights and powers, and subject to all the duties, obligations, and liabilities provided by this and chapter forty-six."

But no such indorsement of the certificate of the officers of the proposed corporation by the attorney-general was obtained. The signers of the " written articles of agreement " mentioned in § 18 never became a corporation. There was an attempt to become one but it failed. The doings under such attempted organization became void and of no effect. There was no power in the vanished corporation to collect its attempted assessments.

But it is claimed that the defendant is made liable by virtue of the act creating the plaintiff corporation, by which the attempted organization of the Richmond Factory Association and all their doings and their by-laws are ratified and made legal, " so far as the same shall not be repugnant to the constitution and laws of this State," and all contracts hitherto made by said association are

hereby made valid and binding both upon said association and the person or persons or corporations who may have entered into contracts with such corporators.

The defendant had no agency in procuring the charter of the plaintiff corporation, nor has he since, by any voluntary act of his, become a member of the same. No man can be compelled by the legislature to become a member of a corporation without his consent. The mere enactment of a charter for a corporation does not create the corporation without an act of acceptance on the part of the persons named in the act as corporators. However willing the defendant might have been to become a member of the association as originally contemplated, there is no evidence of a willingness to become a member of the present corporation. On the contrary, his struggle is not to be made one against his will. Had there been indications of profit it might have been otherwise.

The limits originally proposed by the articles of agreement were twenty thousand dollars. The plaintiff corporation may increase their capital stock to one hundred thousand dollars. The liabilities of the defendant would be increased by becoming a member of the plaintiff corporation. He may well say, as he does, "*non in haec foedera veni*," and there is no gainsaying it. Further, a part only of the signers of the "written articles of agreement" of July 20, 1871, are incorporated as the plaintiff corporation, seven of the number being omitted in the charter, so that the extent of his liability is increased, and the number of his associates is diminished—thus affording a double reason why he should not be compulsorily made a member of a corporation against his will.

The corporators named in the act of Jan. 26, 1872 (the defendant excepted), pursuant to notice, met on March 27, 1872, and accepted the charter thus granted and organized under the same. The corporators of the plaintiff corporation are not liable for any assessments made by its officers, none having been made since its organization. It is difficult to perceive how they can be liable for assessments made before their corporate existence. They have not adopted (if they could do so legally) the assessments made by the officers under the first and unsuccessful attempt at organization.

The cases cited by the counsel for the plaintiff in his ingenious and elaborate argument are not embarrassed by the difficulties which must prevent a recovery in this action.

In *Penobscot R. R.* v. *Dummer*, 40 Maine, 172, it was held that a promise in writing to take and fill a certain number of shares in a chartered company by a subsequent organization of the company and an acceptance of the subscription, becomes a binding contract. It is said, remarks Shepley, C. J., "that there being no such corporation existing when the agreement was made, there is no binding contract."

"It amounted to a written proposal to take so many shares, and when the corporation had been organized and had accepted the proposal, a valid contract was made. When the corporation was organized, the shares subscribed for were recognized as shares of its stock, and the subscribers as corporators. This was sufficient to complete the contract."

But in the case at bar no such facts exist. The signers of the written articles of agreement never contemplated the procuring an act of incorporation. Their purpose was to become members of a corporation different in its mode of organization—in the amount of its capital stock, and consequently in the individual liability of its members.

But if they were members without assent and against their will, in no case have subscribers been held liable to assessments except by and under the action of the corporation of which they were members. In no case have they been held to pay the assessments of an incipient but incomplete corporation, and which were made, or rather attempted to be made, before the corporation of which they are members had sprung into existence.

In *Bedford R. R. Co.* v. *Bower*, 48 Penn. 28, it was said that a change in the charter reducing its capital did not affect the liability of a stockholder who had participated in the election of its officers; but here was no such participation.

In *Eastern Plank Road* v. *Vaughan*, 20 Barbour, 155, the defendant and others signed a paper promising to pay B. & W. $100

for each share by him subscribed for the purpose of building a plank road. B. & W. were authorized to transfer the subscription to a company to be formed to build the road. The defendant took one share. Afterwards, articles of association were signed by the subscribers, except the defendant, for stock exceeding the original subscription, and the organization was completed by filing the articles of association, and the subscription signed by the defendant and others was transferred to the company by B. & W., and the defendant's name was subscribed to the books by them.

The court held that if B. & W. were agents to subscribe, their subscription would bind the defendant, and if not agents for that purpose, they were agents to transfer the defendant's subscription, and that such transfer vested in the plaintiffs the title to the subscription and the authority to collect the money due or to become due under it. In short, the defendant was a corporator by the authorized agency of B. & W., to subscribe for him or to transfer his subscription.

In *Edinboro Academy* v. *Robinson*, 37 Penn. 210, it was held that subscribers to a fund for the erection of an academy, become an association of persons united for contributing to a common fund for a common purpose, as soon as the stipulated amount of money has been subscribed, which act of association involves an agreement to organize for the purpose contemplated. In that case the specific mode of organization and the amount of capital were specially agreed upon. An agreement to do a specific thing can never be deemed an agreement to do something else.

In *Hess* v. *Wertz*, 4 S. & R. 356, it was decided that promissory notes issued by an unincorporated association were recoverable in a suit against the members of such association, notwithstanding they contained a promise to pay " out of their joint funds according to the articles of their association." The defendants being an unincorporated association, the notes as issued by them were declared null and void. Subsequently an act was passed repealing the provision rendering them void. In delivering his opinion, Duncan, J., says : " The plaintiff replies, but the prohibition is

taken off and the law has empowered him to recover from you that which you promised to pay; the whole system was a matter of policy; the prohibition was not intended to confer any right on these associations, but as a measure of policy to check a growing evil. . . . The interdiction is taken away and the party is restored to his common-law remedy, as if the prohibitory act had not been passed."

But the case under consideration presents no such state of facts as in *Hess* v. *Wertz.*

Indeed, no case has been cited, and we believe none can be found where a recovery has been had by a party whose claims were subject to the infirmities incident to those of this plaintiff.

In the case against Alexander the same result must follow as in that against Clarke; he is not even named as a corporator.

*Judgment for defendant.*

Walton, Dickerson, Barrows, Danforth, and Virgin, JJ., concurred.