# Planters' and Merchants' Mutual Insurance Company *v.* Selma Savings Bank.

*Bill in Equity to compel Transfer of Stock on Books of Private Corporation.*

1. *Transfer of stock in private corporation, and lien of corporation on stock.* — The by-laws of an incorporated savings-bank, passed in the exercise of its corporate powers, requiring transfers of stock to be entered on its books in the presence of its president or secretary, and declaring a lien in favor of the bank on the stock of any shareholder who is indebted to it, not only on account of his unpaid stock, but also for all other debts and liabilities whatever, are intended for the protection and security of the bank, and of third persons who may in good faith acquire stock without notice of prior equitable transfers; but, while the legal title to stock can only be acquired by a transfer made in the mode prescribed, a complete equitable title may be otherwise acquired, entitling the transferree to demand that he be invested with the legal title.

2. *Same; stock held by partnership.* — On the dissolution of a partnership owning stock in such savings-bank, the retiring partner selling out his interest to the others, and the latter assuming all the debts of the partnership, and continuing the business under a new name; the new firm, as the successor of the old, becomes the equitable owner of the stock; and the bank's lien on the stock covers the liabilities of the new firm, in its subsequent transactions with the bank, and must prevail over the claim of an equitable assignee of the retiring partner.

3. *Same; estoppel in pais.* — No estoppel can arise against the bank, in such case, from a letter written by its cashier to the old firm, or to the retiring partner, stating that there was no lien or incumbrance on the stock in favor of the bank; the letter containing no intentional misrepresentation, and being written more than twelve months before any interest in the stock was acquired by the equitable assignee.

4. *Demurrer; specification of grounds.* — A demurrer to a bill in equity must set forth specially the causes or grounds of demurrer (Code, § 3748), and the court can not consider any other ground not specifically assigned.

5. *Supplemental and amended bills; facts occurring after filing of bill.* — Supplemental matter, supporting the complainant's right to the relief prayed by the original bill, may be introduced by amendment, without filing a supplemental

[P. & M. Mutual Ins. Co. v. Selma Savings Bank.]

bill (48th Rule of Chancery Practice); but, if the original bill does not make out a case for relief, facts subsequently occurring, no matter how introduced, can not avail the complainant.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. CHARLES TURNER.

The original bill in this case was filed on the 19th July, 1877, by the appellant, a domestic corporation, located and doing business in Mobile, against the Selma Savings Bank, also a domestic corporation, located and doing business in Selma; and sought to compel the defendant to transfer on its books two certificates of stock, of which the complainant claimed to be the owner and holder for valuable consideration, and which the defendant, or its officers, refused to transfer on demand before the filing of the bill. The certificates of stock, which were copied at length in the bill, were in favor of H. A. Stollenwerck & Brothers, and purported to be "transferrable only on the books of the company, by them or their attorney, on surrender of this certificate;" and on each was an indorsement, signed by said H. A. Stollenwerck & Brothers, appointing "W. White, cashier," their attorney irrevocably "to sell and transfer to the Planters' & Merchants' Mutual Insurance Company of Mobile the whole or any part of the within named shares," &c. The bill alleged that these certificates "were assigned and delivered to complainant by F. E. Stollenwerck, who was a member of said firm of H. A. Stollenwerck & Brothers, in the ordinary course of business, for a present consideration, of value fully equal to the value of said stock, the said consideration being given to said Stollenwerck by complainant at the time of the receipt of said certificates." It alleged, also, "that at the time said stock was offered to be sold and transferred to complainant, as above set forth, special inquiry was made by complainant's agents and officers, of said Stollenwerck, as to whether or not there was any lien held by said bank on said stock; and complainant was then and there assured by said Stollenwerck that there was no lien on said stock in favor of said bank, and that he had in his possession an official communication from the cashier of said bank, certifying to the fact that the bank had no lien or claim on the stock; and complainant alleges that a communication to that effect was in fact written by said cashier to said Stollenwerck & Brothers, and was written for the purpose of enabling them to transfer said stock; and that the same was communicated to complainant, and upon the faith of the same complainant traded for the said stock, giving full value therefor." It was alleged, also, that in March, 1877, the complainant requested and demanded the defendant to transfer these shares of stock

on its books to the complainant; that the defendant, through its officers, refused to make such transfer, and claimed to hold a lien on the stock, but refused to give the complainant any information as to the nature or extent of its lien; and the bill alleged, on information and belief, that the defendant did "not in fact hold any contract, obligation, or debt, which in law gives it a lien on said shares of stock." The prayer of the bill was, that the defendant might be compelled to transfer the shares of stock on its books to the complainant, and for general relief.

The defendant answered the bill, denying the complainant's ownership of the stock, and asserting a lien on it, under its by-laws, for debts due to it from said H. A. Stollenwerck & Brothers, and its successors in business, Stollenwerck & Brother, and F. E. Stollenwerck & Brother; which lien, it alleged, accrued under these circumstances: The firm of H. A. Stollenwerck & Brothers, in whose name the certificates of stock were issued, was composed of three brothers, H. A. Stollenwerck, F. E. Stollenwerck, and A. G. Stollenwerck; and this firm was dissolved, on or about the 1st September, 1876, by the withdrawal of H. A. Stollenwerck, who transferred all his interest in the business and assets of the partnership to the other members, who assumed all the debts and liabilities of the partnership, and continued business under the firm name of F. E. Stollenwerck & Brother, and afterwards of Stollenwerck Brothers. At the time of H. A. Stollenwerck's withdrawal from the partnership, it was indebted to the defendant in the sum of about $20,000; and of this amount, the answer alleged, about $12,000 was still due at the filing of the bill; the evidences of indebtedness being renewed from time to time, as they matured, and changed in form in the subsequent dealings between the new firms and the defendant; and for this entire indebtedness the defendant claimed a lien on said stock, under the provisions of its by-laws, which were set out in the answer, and which are also copied in the opinion of the court. The answer further alleged that, when the complainant obtained the certificates of stock, the blanks in the indorsed power of attorney, for the names of the attorney and of the transferree, had not been filled up; that the defendant had no notice of any interest in the stock on the part of the complainant until on the 20th March, 1877, after Stollenwerck & Brother had failed, when a letter was received from the complainant asking and demanding to have it transferred on the defendant's books; that the indorsements were not filled up until after that day; and that the complainant's subsequent demand for information, as to the amount, nature and extent of the de-

fendant's lien, was refused, because the complainant had then employed counsel to bring this suit, and desired the information for that purpose. As to the letter alleged to have been written by the defendant's cashier, the answer denied the authority of the cashier to write such a letter; denied that the complainant had any right to act, or had in fact acted, on the letter; and denied that any liability against it could be created by the letter, if any such was written.

The evidence showed that the certificates of stock, after the dissolution of H. A. Stollenwerck & Brothers, were treated by all the partners as the property of the firm, and were transferred to the complainant by F. E. Stollenwerck, on the 26th December, 1876, as collateral security, or in exchange for other collateral security, held by complainant against Stollenwerck & Brother; and the blanks in the indorsement were not filled up until about the time when the bill was filed. The letter of the defendant's cashier, mentioned in the bill, was not produced, and was said to have been lost; but one of the witnesses, who was the bookkeeper of the Stollenwerck brothers, testified in relation to it: "My belief has always been, that Mr. Stollenwerck sent it to New York, with some other certificates of Selma Savings Bank stock, which he hypothecated there. The purport of said letter was, that the said bank had no lien whatever on said stock. It was addressed to F. E. Stollenwerck & Brother, and stated that the bank had no lien whatever upon the stock." F. E. Stollenwerck thus testified in reference to it: "At the time I handed said certificates to Mr. Lathrop," the complainant's secretary, "he asked me if the bank had any lien on them. I replied, that I had written to my firm in Selma, some time before, asking them to get a letter from the cashier of the bank, stating whether or not the bank had a lien upon its stock; and that I received, in response, a letter from Mr. White, cashier, addressed either to H. A. Stollenwerck & Brothers, or to F. E. Stollenwerck & Brother, in which he stated that the bank had no lien on its stock. The letter was not exhibited to Mr. Lathrop then, nor upon any other occasion. . . . It was a short letter, and its contents were to the effect that the bank held no lien upon its stock." On the part of the defendant it was proved that said White, the writer of said letter, was the defendant's secretary, only from the 1st January, to the 15th September, 1875.

At the hearing, the complainant asked leave to file an amended bill, alleging that, since the filing of the original bill, the defendant had received the proceeds of sale of valuable property, held by it as collateral security for the debts

due from the Stollenwercks, leaving but a small balance, if any, of the indebtedness of the old firm still due and unpaid; offering to pay this balance, as ascertained on an accounting under the order of the court; and adding to the prayer of the bill the following words : "Orator prays, in case it should appear there is due from said H. A. Stollenwerck & Brothers, in whose name said stock stands, any debt which constitutes a lien on said stock, that an accounting may be taken ascertaining the amount thereof, and charging the defendant with the value of the property and money received thereon; and that orator may be allowed to pay the same, and thereupon have the stock transferred and assigned on the books of the company to your orator." The defendant demurred to the amended bill, assigning the following as causes of demurrer : 1st, "that if the complainant was not entitled to relief when the original bill was filed, complainant can not become entitled to relief by events occurring after the bill was filed;" 2d, "because the complainant is not entitled to relief against this defendant on account of payments made after the commencement of this suit;" 3d, "because the complainant can not maintain the equity of its bill by events occurring after the original bill was filed." The chancellor overruled the demurrer, and allowed the amended bill to be filed; but, on final hearing, on pleadings and proof, he held the demurrer to be well taken, and dismissed the amended bill, and also the original bill. From this decree the complainant appeals, and here assigns as error the sustaining of the demurrer to the amended bill, and the final decree dismissing the original bill.

LAPSLEY & NELSON, for appellant.—1. The amended bill alleged, that all the debts of H. A. Stollenwerck & Brothers, in whose name the stock stood on the defendant's books, had been paid, or nearly paid; and offered to pay the balance, if it was adjudged a lien. This was a substantive allegation, having no connection with what followed, but rather supplementary to the matter of the original bill, which alleged that the defendant did not hold any debt which was a lien. This part of the amendment was not demurred to, and the court had no right thus to pass on it, being confined to the consideration of the causes of demurrer specially assigned. Code, § 3784; *Ray's Adm'r v. Womble*, 56 Ala. 36; *Chambers v. Wright*, 52 Ala. 444; also, *Johnson v. Culbreath*, 19 Ala. 348. Note, too, these facts are not alleged as ground of relief, but are prayed to be taken into the account, and charged to the defendant at the true value of the property received and appropriated. As to any repugnancy between the amendment

and the original bill, no question can arise, because none is raised by the demurrer. To make an amendment of the bill improper, there must be an inconsistency, or repugnancy, between its purpose and that of the original bill—a mere inconsistency between the allegations of the two bills is not enough.—*Ingraham v. Foster*, 31 Ala. 132; *King v. Avery*, 37 Ala. 169. The purpose of each of the bills, as expressed in the prayer, is identical—that the court will decree a transfer of the stock on the books of the defendant. A sufficient excuse for not making a tender, or offer to pay the balance due, if any, before suit was brought, is shown, and the offer in the bill is sufficient.—*Gunn v. Brantley*, 21 Ala. 632; *Cain v. Gimon*, 36 Ala. 168.

2. That the complainant, as the legal owner and holder of the stock, had a right to file a bill for an account, and to redeem the property from the lien, irrespective of its amount or extent, can not be disputed, and requires no citation of authorities. But the evidence shows that, on the 26th December, 1876, when the complainant acquired the stock from F. E. Stollenwerck, all the debts contracted with the defendant by H. A. Stollenwerck & Brothers had been paid, or cancelled and discharged, and new obligations given and accepted in their stead; and that the defendant then held no paper or obligation with the name of H. A. Stollenwerck & Brothers upon it, as makers, indorsers, acceptors, or otherwise. It was natural, and in accordance with general commercial usuage, that the creditor should prefer the paper of the new and active firm, which could be used for all the purposes of business, to that of the defunct partnership; but the change and substitution necessarily discharged, and was intended to discharge, the old firm from its liability.—Parsons on Partnership, 421-2; *Arnold v. Camp*, 12 Johns. 409; *Muir v. Cross*, 10 B. Mon. 277; Collyer on Partnership, § 909; *Evans v. Drummond*, 4 Esp. 89; *Reid v. White*, 5 Esp. 122; *Thompson v. Percival*, 5 Barn. & Ad. 925; *Kirwan v. Kirwan*, 2 Cr. & Mees. 617; 2 Dan. Neg. Ins. $ 1268. If it be said, that the creditor can not be presumed to have discharged a lien; the answer is, that the defendant did not then claim a lien, and did not believe it had any lien.

3. The right of the defendant to retain the stock, under its by-laws, for the debts of the new firms, was not contended for in the argument before the chancellor. The lien extends only to debts due by him in whose name the stock stands on the books of the company, he being the real owner.—*Helm v. Swigett*, 12 Indiana, 195, and cases cited. These secret liens, it is suggested, are opposed to the whole policy of the registration statutes, which are intended for the protection of in-

nocent purchasers, and they should not be extended by construction.

4. The complainant traded for the stock on the faith of the letter written by the defendant's cashier, which contained an express assurance that the stock was clear of any lien. It was not necessary that the letter should have been addressed to the complainant, or even exhibited to it. *Smith & Ferguson v. Ledyard, Goldthwaite & Co.*, 49 Ala. 279.

Brooks & Roy, and Pettus, Dawson & Tillman, *contra.*
1. There was no alternative averment, in either the original or the amended bill, on which to base the alternative relief prayed in the latter; and the granting of that relief would not only have been in the absence of appropriate allegations, but in actual contravention of the case made by the bill. *Rives, Battle & Co. v. Walthall*, 38 Ala. 333; 2 Paige, 396. Again, it is well settled, that relief can not be granted on events which occurred after the filing of the bill.—38 Ala. 334; *Land v. Cowan*, 19 Ala. 238; *Hill v. Hill*, 10 Ala. 527.

2. At common law, a banker has a general lien on all the securities of his customers, for the balance due him.— *Davis v. Bowsher*, 5 Term R. 247, mar. 488; 6 Man. & Gr. 630; 33 L. J. C. 51. By virtue of statutes, charters, and by-laws passed in pursuance thereof, this lien is now given to most private corporations, for debts due from their stockholders. It is not necessary that the lien should be expressly declared by statute, or by the charter; it is sufficient that it is declared by by-laws, passed in pursuance of authority conferred by the charter.—Code, §§ 2040-44. By the charter and by-laws of the defendant in this case, a lien is expressly given for the debts due to it from H. A. Stollenwerck & Brothers, to whom the certificates of stock were issued; and this lien extends to the debts and liabilities of the successive firms, and of the three partners who composed each of those firms.—*Mobile Mutual Ins. Co. v. Cullom*, 49 Ala. 562; *Cunningham v. Ala. Life Ins. and Trust Co.*, 4 Ala. 652; *Stebbins v. Phœnix Ins. Co.*, 3 Paige, 350; *Union Bank v. Laird*, 2 Wheaton, 390; Abbott's Dig. Corp. 757; 3 Kernan, 599; 24 N. Y. 283; 10 Peters, 596.

3. No estoppel can arise against the defendant, from the letter said to have been written by White, its cashier; because, in the first place, its contents are not satisfactorily proved. One witness says, its statement was that " the bank had no lien on *said* stock;" while F. E. Stollenwerck, who made the transfer of the stock, and on whose representation the complainant claims to have relied, testifies that its language was that " the bank had no lien on *its stock*,"—evi-

dently, the mere expression of the writer's opinion as to the construction of the by-laws. Again, it is not shown that the letter was written while White was the defendant's cashier; and if written during that time, it was not within the scope of his duties or authority, and the defendant is not bound by it.—Story on Agency, § 115; 14 Mass. 58; 17 Mass. 28, 504; 21 Howard, 356-64; 6 Peters, 51; 8 Peters, 12; 8 Ala. 340; 18 Ala. 479. Moreover, the letter was not acted on, and therefore is wanting in one of the essential elements of an estoppel: it was not produced, nor called for, and the transaction was not based on it.—*Pounds v. Richards*, 21 Ala. 424; *Ware v. Cowles*, 24 Ala. 446; *Gamble v. Gamble*, 11 Ala. 966; *Miller v. Hampton*, 37 Ala. 342.

BRICKELL, C. J.—The principal questions presented by the original bill are—first, whether the appellee has a lien on the stock standing on its books in the name of H. A. Stollenwerck & Brothers, for debts due and owing it, from the said firm or its successor, having an equitable title to the stock; second, whether there are found in the case facts and circumstances, which render it inequitable to assert the lien against the appellant.

The by-laws of the bank, passed in the exercise of its corporate powers, regulate the mode of transferring stock, and define the rights and liabilities of transferror and transferree, and the rights of the bank in the event of transfer. The ninth of these by-laws is in these words: "All transfers of stock shall be made in a book kept at the office of the company, in the presence of the president or secretary; and no new certificate of stock shall be issued, until the old is surrendered, except in case of loss." The fifteenth reads: "Any stockholder, who has paid up his stock note in full, and is not otherwise indebted or liable to the company, may transfer his stock at any time, upon the surrender of his certificate." The sixteenth reads: "Stockholders who have not paid up their stock in full, or who may be otherwise indebted to the company, shall not transfer their stock on the books of the company, until the person to whom such transfer is proposed to be made, shall give to the company notes, with satisfactory security, to be approved by the president, for the amount due on such stock note, or other liability. When such stock note and security are given, the stock may be transferred, and all evidence of debt or other liability surrendered to the stockholder transferring the stock."

The point of contention is not that these by-laws, though not in terms so expressed, are not the equivalent of an immediate, clear reservation by the bank of a lien—a right to

retain and hold for its own indemnity, security and protection, the stock of every shareholder, not only for the payment of the debt which may have been contracted in the acquisition of the stock, but of any other debt, whether it is in the relation of principal or surety, or of indorser, or guarantor, which the bank had the power and the shareholder had the capacity to create. The point of contention is, that the lien, the right of the bank to hold and retain, extends only to the debts or liabilities of the nominal shareholder, and does not embrace new debts, of which these are the consideration, or other debts, contracted by the equitable owners of the stock known by the bank to be such owners. This is reducing the controversy to the analysis most favorable to the appellant, without discussing or considering other questions, which might arise, if the bank was seeking to fix a liability on parties whose names do not appear on the paper it now holds, and as a security for which it claims a lien.

The mode of transferring stock provided by the by-laws, is intended for the protection and security of the bank, or of third persons who in good faith, on a valuable consideration, may in that mode acquire the stock, without notice of prior equitable transfers, or of outstanding equities. The legal title to the stock cannot pass, unless this mode of transfer is observed. But a complete equitable title may be acquired by a transfer in any form or manner appropriate to pass property of that kind, divesting the stockholder of all right and interest, and entitling the transferree to demand that he be invested with the legal title.—*Duke v. Cahawba Navigation Co.*, 10 Ala. 82; *Black v. Zacharie*, 3 How. (U. S.) 483. On the dissolution of the firm of H. A. Stollenwerck & Brothers, who were then the legal and equitable owners of the stock, and in whose name it stood upon the books of the bank, the stock, with all other partnership assets and property, was transferred to the succeeding firm of F. E. Stollenwerck & Brother, or of Stollenwerck Brothers, which assumed, and were bound to pay, all the debts of the dissolved partnership. Thereby, the new firm became the equitable owners of the stock, of which the bank had notice. It may be admitted, that, when the transfer of the stock was made to the appellant, there were no debts of H. A. Stollenwerck & Brothers, remaining in the same form as when that partnership was dissolved; and it may be from all such debts that partnership was discharged by the subsequent transactions between the bank and the succeeding firm. But the succeeding firm, the equitable owners of the stock, were indebted to the bank; and it is as a security for the payment of such debts the bank claims a lien. The lien created by

the by-laws, for the security of the bank, extends not only to stock of which the stockholder may have the legal title, but to all of which he is the real, beneficial owner, though the legal title may reside in another. The lien would not be available against a *bona fide* purchaser, who, without notice of it, upon a valuable consideration, might acquire the legal title. But, as against the stockholder, and all who merely succeed to his rights and equities, the lien must prevail. *Stebbins v. Phœnix Ins. Co.*, 3 Paige, 350. It is intended as a security to the bank—a security to which, in equity and good conscience, it is entitled, for all debts which may have been contracted on the faith of it. Credit may be, and is doubtless, often extended to the real, beneficial owner, on the faith of the stock, and in reliance upon it as a security. We can perceive no good reason, and we are not aware of any authority requiring it, to limit the lien to debts owing the bank by the holder of the legal title only, excluding such as may be due from the owner of the complete equitable title. It is not, therefore, a material inquiry, whether the debts due the bank are to be regarded as in any sense the debts of H. A. Stollenwerck & Brother, in whom the nominal and legal title to the stock resides, or as the debts solely and exclusively of the succeeding firms, in whom the beneficial ownership resides.

3. The estoppel of the bank to assert, as against the appellant, a lien on the stock, is supposed to arise from statements made in a letter, said to have been written by its cashier, in 1875, addressed either to the firm of Stollenwerck & Brother, or to one of its members, F. E. Stollenwerck. The letter is lost, or mislaid, and from the secondary evidence introduced, it is difficult, if not impossible, to ascertain its contents with any degree of certainty. It is consistent with the evidence, that the letter contained no more than an expression of the opinion of the cashier, that the bank had not, as matter of right, or of law, a lien on the stock of its stockholders, for debts owing, or liabilities incurred to it. If the letter contained no more than this, intentional misrepresentation, to influence the conduct of the appellant, not being imputable, there would be in it no element of estoppel. *Townsend v. Cowles*, 31 Ala. 428. But, suppose it was the distinct affirmation of the fact, that at the time it was written there was no lien or incumbrance in favor of the bank on this particular stock; it was the affirmation of a present existing fact only, and not a representation or guaranty that the fact would continue to exist. It was more than twelve months after the writing of the letter, before the appellant entered into the transaction, which it now declares was influenced by

it. It must have occurred to the officers of appellant that, while it may have been true, when the letter was written, that there was no lien or incumbrance on the stock, the fact was not in its nature continuing—that, in the ordinary transactions of business, it might be a fact on one day, and not weeks, months, or a year thereafter. The appellant had no right to rely on the statements of this letter, as a representation of the rights of the bank months after it was written.

4-5. Under the statute (Code of 1876, § 3784), a demurrer to a bill in equity must set forth the ground of demurrer specially; otherwise, it cannot be heard. The attention of the court is confined to the particular cause assigned; and though there may be other good and sufficient causes apparent, the demurrer must be sustained only on the cause particularly assigned. The single ground of demurrer assigned to the amended bill, is, that it founds the claim to the relief thereby prayed on facts which occurred after the filing of the original bill. Whether it does not entirely abandon the case made by the original bill, and introduce a new and different case, making really a new bill, is not a matter the demurrer presents. Under our practice, supplemental matter, by which we mean new facts occurring since the filing of the original bill, supporting the right of the complainant to the relief thereby prayed, may be introduced by way of amendment—there is no necessity for resorting to a supplemental bill.—Rule 48 of Chancery Practice. But, upon facts occurring subsequent to the filing of the original bill, the complainant cannot obtain relief, no matter how introduced, whether by amended or supplemental bill, if on the original bill relief could not be had.—*Hill v. Hill*, 10 Ala. 527; *Land v. Cowan*, 19 Ala. 297; *Vaughn v. Vaughn*, 30 Ala. 329. The amended bill, admitting the right of the bank to retain and hold the stock as a security for the debts due to it from the beneficial owners, claims to be let in to redeem, holding the bank to account for, and apply collaterals it has, since the filing of the original bill, received, and disposed of in some way. If, upon these facts, the complainant could obtain relief, not being entitled to any on the original bill, and certainly not to relief of this character, the amended bill would be converted into a new original bill, and relief granted upon rights having no existence at the commencement of the suit.

We find no error in the decree of the chancellor, and it is affirmed.