### LOT D. VANSANDS *vs.* MIDDLESEX COUNTY BANK.

S. held ten shares of the stock of the M. C. Bank, the certificate thereof being as follows : " S. is entitled to ten shares of the capital stock of the M. C. Bank, transferable at said bank only by him or his attorney on surrender of this certificate, subject nevertheless to his indebtedness and liability at the bank, according to the charter and by-laws of said bank." Neither the charter nor the by-laws contained any provision with regard to such a lien, but the former authorized the stockholders to establish by-laws and regulations for the well-ordering of the concerns of the bank, and made the stock transferable according to rules to be so prescribed. This form of certificate had been adopted by the directors soon after the organization of the bank, and used in all cases since, a period of about fifteen years, and S. accepted the one held by him with full knowledge of its provisions and of the usage of the bank on the subject. While holding the stock S. made a general assignment for the benefit of his creditors, such assignment vesting in the trustee an equitable title to the stock. At the time of the assignment S. was liable to the bank as an acceptor of the draft of C., which had been discounted by the bank for C., to a greater amount than the value of the stock. In discounting the draft, the officers of the bank relied in part on the stock of S. as security for the payment. After the assignment, the trustee, who at the time of the assignment had no actual knowledge of the provisions of the certificate, called at the bank with S. and requested that S. might be allowed to transfer the stock on the books of the bank to him as such trustee, but the bank refused to allow the transfer until the draft should be paid. In a suit brought by the trustee against the bank for such refusal,—it was held :

1. That the provision in the certificate with regard to the lien was binding on S. by his acceptance of the certificate, such acceptance being equivalent to an agreement that the stock should be subject to the lien.

2. That the trustee, equally with S., was estopped from denying the assent of S. to the terms of the certificate, and took the stock subject to the lien created by such assent.

3. That by a fair construction of the language, the certificate was to be considered as meaning that the stock should be transferable according to the charter and by-laws of the bank, and not that the lien must be one provided for by the charter and by-laws; such a construction being grammatically consistent, while no reason existed why the lien should be restricted in the mode required by a different construction.

4. That although banks are forbidden by statute to make any loan or discount on pledge of their own stock, yet that the statute must be considered as intending a case where the stock is directly and specifically pledged as security for the particular debt, and not where a mere general lien exists, especially where, as here, the discount is made in favor of a third party who has no interest in the stock subjected to the lien.

And *it seems* that in a case falling within the direct prohibition of the statute, it is very questionable whether, as between the parties, the validity of the loan or pledge would be affected.

THIS was an action on the case for a refusal by the defendants to allow Henry D. Smith, an insolvent debtor, to transfer on the books of the bank, to the trustee of his insolvent estate, ten shares of the stock of the bank, standing in his name at the time of his assignment.

The following facts were found by the court:

On the 18th day of January, 1855, the said Smith made an assignment of all his estate to Charles Woodward, in trust for the benefit of his creditors, under the provisions of the act with regard to insolvent debtors passed in the year 1853. At that time he was liable to the defendants to a greater amount than the value of the stock, as an acceptor of the draft of one Coe, which had been discounted by the bank for said Coe. The draft had been protested for non-payment, and remained unpaid at the time of the trial.

Smith first became a stockholder in the bank on the 8th day of September, 1838, by purchasing twenty shares of the stock, and afterward purchased and sold stock from time to time, until the 6th day of April, A. D. 1848, when his stock was reduced to the ten shares now in question, for which he received and held a certificate of the following tenor, of the contents of which he had full knowledge:

[No. 957.]     Middlesex County Bank.     [Ten Shares.]

Henry D. Smith, of Middletown, is entitled to ten shares of the capital stock of the Middlesex County Bank, transferable at said bank only by him or his attorney, on surrender of this certificate, subject nevertheless to his indebtedness and liability at the bank, according to the charter and by-laws of said bank. William S. Camp, Cashier. Middletown, April 6, 1848.

He was also one of the directors of the bank from July, 1842, to July, 1848, and ordinarily attended the meetings of the board.

Neither the charter of the bank, nor the by-laws, contained any provision with regard to a lien in favor of the bank, on the shares of stock holden by persons indebted to the bank. The only provisions of the former in any manner important to the case, were, Sec. 1st., which gave the bank power "to establish and put in execution such by-laws, ordinances and regulations, as may be deemed expedient, for the well ordering of the concerns of said corporation, not contrary to this charter, the laws of this state, or of the United States; and generally to do and execute all such matters and things as to them shall appertain, subject to the regulations hereinafter prescribed;" Sec. 2d, which provided among other things that "the stock or shares shall be assignable according to such rules as shall be prescribed by the stockholders of the bank;" and Sec. 10th, which provided that "there shall be paid at the time of subscribing, in such manner as the commissioners may determine, ten dollars on each share, and ten dollars on each share at the expiration of each ninety days thereafter, until the whole shall be paid."

The charter was granted in 1830, immediately after which the bank was organized, and at a meeting of the stockholders in January, 1831, a code of by-laws was passed, which had since been continued in force without alteration, the following articles of which were the only ones of importance in the present case.

" Art. 2. A certificate, signed by the president or cashier, showing the number of shares of stock to which each stock-

holder is entitled, being first registered in a book provided for that purpose, shall be evidence of ownership of such stock."

"Art. 3. Transfers of stock shall be made in writing, in a suitable book kept for that purpose, signed by the owner, or by some person duly authorized by him or her, in writing, and on surrender of the former certificate or proof of loss of the same to the satisfaction of the directors, such assignee shall be entitled to receive a new certificate in his or her own name which shall be registered as aforesaid."

The form of the certificate held by Smith was adopted by the directors of the bank shortly after its organization, but no special vote in relation thereto was known to have been passed. These certificates were issued to the original subscribers to the stock of the bank on their paying their first installments, and the subsequent installments were endorsed thereon as they were paid, and after the stock was all paid in they continued to be used, and had ever since been used in all cases where certificates were issued, and had been received and retained by the stockholders without objection. The directors had always regarded the stock of any party indebted or liable to the bank, as pledged to the bank, by force of the certificate held by him, for such indebtedness or liability, and had sometimes asserted the claim, the few instances in which they had done so, being the only ones remembered when they had occasion to do it. And in making the discount in question for said Coe, the directors relied on the stock of Smith as partial security for his indebtedness as acceptor of the paper discounted.

The said Woodward, as trustee of the assigned estate of Smith, on the 19th of January, 1855, requested the defendants to allow Smith, who called at the bank with him for the purpose, to make a transfer of the stock to him as such trustee, but the defendants refused to allow it until the acceptance in question should be paid, claiming to hold a lien on the stock therefor.

At the time of the assignment of Smith, Woodward had no actual knowledge of the conditions and terms of the cer-

tificate, but at the time of making the above demand he had received the certificate from Smith. Woodward resigned the office of trustee in June, 1855, and the present plaintiff was appointed in his place.

Upon these facts the case was reserved for the advice of this court. It was argued at the November term, 1856, and, by direction of the court, reargued at the present term.

*Hooker*, (with whom was *Carter*,) for the plaintiff.

1. There is no legal liability on the part of Smith to pay the draft discounted by the bank and for which they claim a lien on the stock, because the discount was in direct violation of the statute. A bank is expressly forbidden to make a loan or discount on pledge of its own stock. Rev. Stat., tit. 3, § 226. The loan is found in this case to have been made "in reliance upon the stock as partial security." It would be much better for a bank to take a direct transfer of the stock than to rely upon a mere equitable lien, because the former is more sure and the bank less liable to lose its security. It would be very easy to evade the statute if all that is necessary is to take an equitable and not a legal title to the stock. This statute shows that the policy of our law is opposed to such liens, and in a doubtful case this policy should be decisive against the validity of such a lien.

2. The charter confers upon the bank no power to impose such a lien on its stock, and the bank can have no powers not derived expressly or by implication from the charter. It is found that the charter contains nothing on the subject. It does, however, confer on the bank the power to make by-laws and regulations. A by-law on the subject might therefore establish such a lien. But it is also found that no by-law on the subject has ever been passed. It will not do to say that a mere usage is enough, as the regulations and by-laws intended by the charter must be written regulations and by-laws. The charter speaks in the second section of rules "prescribed by the stockholders," and in providing that the stock shall be transferable according to rules so prescribed, the charter contemplates only rules as to the mode of trans-

fer, not as to liens and other conditions; and so the bank regarded it, in enacting, immediately after, their by-laws, which, so far as they relate to transfers of stock, deal only with the mode of making the transfer.

3. The certificate itself confines its operation to liens held "according to the charter and by-laws of the bank." The certificate is of course the best and decisive evidence as to what the lien was to be. It must therefore be one that the charter and by-laws provide for. But, as we have said, neither the charter nor by-laws contain a word that by any construction can favor such a lien. Besides, and the fact is in the circumstances a very important one, we find enough to answer the demands of the certificate in the liability for installments of stock. It is found that these certificates were issued to the original subscribers, on the payment of the first installment, and the later installments were indorsed on them as they were paid. Now this liability for the later installments was, in the very words of the certificate, an "indebtedness and liability according to the charter and by-laws of the bank," the tenth section of the charter providing for the payment of such future installments, and for an application to such payment of the proceeds of the stock in case the stockholder should not pay, thus clearly authorizing the imposition by the bank of such a lien, and furnishing all that the language of the certificate demands. In such a case we ought not to look elsewhere for possible applications of that language, and especially ought not to accept an application that is not only doubtful in itself, but contraventive of our general policy on the subject of liens.

4. The lien claimed is invalid for the further reason that it is a lien for a general and not a specific indebtedness. The rights of the defendants, if they exist at all, are those of equitable mortgagees. Their power to prevent a transfer by the mere accident of the books being in their possession, does not make it a case of the possession of the pledge by a pledgee. The legal title remains in Smith, and the rights of the defendants are to be measured and determined by the rules of equity with regard to mortgages. The rule is well settled with us

that a mortgage must contain within itself reasonable notice
of the nature and extent of the incumbrance.  2 Kent's Com.,
584, and numerous decisions of our own court.  Here the
most general language is used, with no restriction whatever
as to the nature or amount of the debt intended.  It would
embrace any conceivable indebtedness.  It is thus a mere
general lien, a thing which the policy of our law entirely
condemns.

5. If the lien is good against Smith on the ground of his
agreement implied in, or evidenced by, his acceptance of the
certificate, yet it can not be good·against the plaintiff.  It
would in this case be a secret lien.  It can be an open one
only on the ground that the certificate states it.  But it is
very doubtful whether this be enough to give notice.  And if
it be, it gives notice only of a lien according to the charter
and by-laws, which give no lien.  The agreement of Smith,
as distinct from this express provision of the certificate, is a
secret lien of the worst kind.  A purchaser without notice
would not be affected by it.  And it is expressly found that
the plaintiff had no notice; and not even of the provisions
of the certificate.  So that as a purchaser he would not be
affected by a secret equity existing between the defendants
and Smith.  But creditors clearly are not affected by it.
*Nesmith* v. *Washington Bank*, 6 Pick., 324, 329.  And the
plaintiff being a trustee for creditors, stands on the same
ground as an attaching creditor.  *Swift* v. *Thompson,* 9 Conn.,
63, 69.  *Miner* v. *Mead,* 3 Conn., 289, 294.  This is especially
so under our present insolvent law.  An assignment under
it is not to be regarded as a voluntary conveyance, the debtor
making it under a compulsion as effective as the process of
law which takes away his property by attachment and execu-
tion.  The trustee is the agent of the creditors to take sum-
mary possession of the property in their behalf.  It is the
legal mode provided for the creditors to seize the property.
In many cases creditors have attached, and on an assign-
ment the attachments are set aside.  It would be strange if
the creditors by their attachments could hold property which

the trustee, coming in under the law, and taking the place of the attaching creditors, can not hold.

6. The form of action is right.

By the assignment to the plaintiff he had an equitable title to the stock, but the right to be allowed to go to the books with the assignor and have a transfer made, was a legal right. It had nothing to do with the equitable character of his title to the stock. It is just as if a town clerk should refuse to record a deed conveying an equitable interest. The right denied is a legal right, and the fact that the party's interest in the land is merely equitable, has nothing to do with it.

*Ingham* and *Tyler*, for the defendants.

The defendants claim a lien on the shares of stock in question for the following reasons.

1. An express lien was created by the acceptance of the certificate by Smith, with the clause providing for the lien. Parties may create a lien by positive contract in cases where the law would not imply a lien. 2 Saund. Pl. & Ev., 297, 302. *Kirkman* v. *Shawcross*, 6 T. R., 14. Smith's Merc. Law, 660.

2. The defendants are vested by their charter with authority to make such ordinances and regulations as may be deemed expedient for the well-ordering of their affairs. The form of the certificate is the same which was adopted originally by the directors, and has been invariably used since the organization of the bank, and consequently its adoption is an ordinance or regulation within the meaning of the charter; and it has received the assent of every stockholder, as all the stockholders have received such a certificate without objection.

3. Every stockholder is bound to know the terms of the charter, and the ordinances and regulations of the bank, and such ordinances and regulations become a part of the contract on which a loan is procured. *Bank of Washington* v. *Triplett*, 1 Pet., 25. *Brent* v. *Bank of Washington*, 10 id.,

596. *Whitwell* v. *Johnson*, 17 Mass., 449. The usage of a bank, known to the party dealing with it, is evidence of the contract of the parties, and of their assent to such usage. *Blanchard* v. *Hilliard*, 11 Mass., 85. *Jones* v. *Fales*, 4 id., 245. *Renner* v. *Bank of Columbia*, 9 Wheat., 581. *Hartford Bank* v. *Stedman*, 3 Conn., 489. *Yeaton* v. *Bank of Alexandria*, 5 Cranch, 52. *City Bank* v. *Cutter*, 3 Pick., 414. *Wild* v. *Gorham*, 10 Mass., 366. The directors of the bank in discounting paper have uniformly had regard to their lien on the stock of an applicant for a loan, and have constantly asserted such right of lien. The usage was well understood, and was binding upon all who dealt with the bank and held its stock. *Mills* v. *Bank of United States*, 11 Wheat., 431. *Lincoln and Kennebec Bank* v. *Page*, 9 Mass., 155. *Same* v. *Hammatt*, id., 159. *Smith* v. *Whiting*, 12 id., 6. *The Union Bank of Georgetown* v. *Laird*, 2 Wheat., 390. 2 Saund. Pl. & Ev., 296. Ang. & Ames on Corp., secs. 352, 353, 355. 2 Stark. on Ev., 883, 4.

4. The trustee is bound by the contract thus created between Smith and the bank. The knowledge of Smith is the knowledge of the trustee, and to hold a contrary doctrine on the ground that the trustee does not represent Smith, but the creditors of Smith, would destroy any equitable obligation outstanding at the time of his assignment, although incurred in good faith long before the law came into existence, and converted as it must be into a general rule it enables a trustee to impair and set aside the obligation of a contract at his pleasure.

5. The defendants as bankers have a right of lien on the stock of Smith for his indebtedness upon general principles of law, independent of the special contract contained in the certificate. *Jourdain* v. *Lefevre*, 1 Esp., 66. *Davis* v. *Bowsher*, 5 T. R., 488. *Savill* v. *Barchard*, 4 Esp., 53. *Bosanquet* v. *Dudman*, 1 Stark., 1. 2 Kent's Com., 503. *Morgan* v. *Bank of North America*, 8 Serg. & Rawle, 73. *Stebbins* v. *Phœnix Fire Ins. Company*, 3 Paige, 350. *Commercial Bank of Buffalo* v. *Kortright*, 22 Wend., 348. *Union Bank of Georgetown* v. *Laird*, 2 Wheat., 390. Case of *Hoquet* v.

*Rensselaer County Bank*, reported in N. Y. Times, Dec. 15, 1856.

6. The plaintiff, having only an equitable title to the stock, can not sustain an action at law. His remedy is only in equity.

STORRS, C. J. It is unnecessary to consider the question whether the plaintiff has adopted the proper form of remedy for the injury of which he complains, because we are of the opinion that the defendants have an equitable lien on the bank shares in question in this suit as security for the indebtedness of Smith to them, and that they are not bound to transfer those shares to the plaintiff until that indebtedness is paid. Neither the plaintiff or defendants have any legal title to those shares, they having been originally owned by Smith, and still standing in his name on the books of the bank, and such title never having been transferred. It is not claimed that any legal interest in those shares passed to the bank by virtue of the stipulation in the certificate given to Smith, that the shares were subject to his indebtedness and liability to the bank. Nor can it be claimed that the assignment of those shares by Smith to the trustee, of whom the plaintiff is the successor, transferred a legal title to them, as it was not made on the books of the bank, and the original certificate to Smith was not surrendered nor a new certificate issued, as was required by the third article of the by-laws of the bank, which was passed in pursuance of its charter, and a compliance with which by-law was necessary in order to transfer a legal title in the shares. *Marlborough Mfg. Com.* v. *Smith*, 2 Conn., 579. *Northrop* v. *Newtown and Bridgeport Turnpike Co.*, 3 id., 544. *Northrop* v. *Curtis*, 5 id., 246. *Oxford Turnpike Co.* v. *Bunnel*, 6 id., 552.

Any interest, therefore, which either of these parties has in this stock, is only of an equitable character. The only title which the plaintiff has to it is derived from the assignment by Smith to his trustee, whom the plaintiff has succeeded. Although, as has been said, no legal title passed by that assignment, it transferred to such trustee such equitable

interest in the stock as the assignor had, and no more; or, in other words, it conveyed an equitable title to it, subject to any equitable claim which existed against it either in favor of the defendants or any other person. We are therefore to inquire, whether the defendants had any such claim when that assignment was made. It is found that Smith was then indebted to them, on paper discounted by them, on which Smith was an indorser, and which was overdue; and they claim that they then had an equitable lien on the stock by virtue of the provision in the original certificate of the stock issued by the defendants to Smith, that it should be subject to his indebtedness and liability to them. If that claim is sustained, as it clearly must be but for the objections of the plaintiff, the result will be, that, as neither of the parties has a legal title to the stock in question, and the defendants have an equitable title to it by virtue of the provision just mentioned, which was prior to that of the plaintiff acquired under Smith's assignment, the title of the defendants must prevail, on the principle that where the equity of the parties is equal, and neither has the legal title, he who is first in time is strongest in right. *Qui prior est in tempore potior est in jure.* This principle is well settled, and was recognized and applied in the case of the *Union Bank of Georgetown* v. *Laird,* 2 Wheat., 390, which, in all essential respects, is precisely like the present, if the objections of the plaintiff to the validity of the defendants' lien are not well founded. See also *The Com. Bank of Buffalo* v. *Kortright,* 22 Wend., 348. *Bates* v. *New York Ins. Co.,* 3 Johns. Cas., 238. We will briefly examine those objections.

The first section of the defendants' charter provides, that they may establish and put in execution such by-laws, ordinances, and regulations, as may be deemed expedient, for the well-ordering the concerns of their corporation. It is conceded that no by-law has been passed by the defendants, giving them a lien on the shares of the stockholders for their indebtedness to the bank, and that no such lien is implied by the general principles of the common law. Angel & Ames on Corp., § 355. *Nesmith* v. *Washington Bank,* 6 Pick., 324.

*Plymouth Bank* v. *Bank of Norfolk*, 10 Pick., 454. And the plaintiff claims that no regulation has been adopted by the defendants subjecting the stock to such a lien. The defendants insist that the adoption by their directors shortly after their organization, of the form of stock certificates like that which was delivered to Smith, the uniform practice ever since of issuing such certificates, and the reception of them by all the stockholders without objection, constituted, or must be deemed sufficient evidence of, a regulation of the corporation, that the stock should be subject to a lien for the indebtedness of its owners, and that no written vote was necessary to its validity; and, further, that an usage by the bank, known to Smith, not to permit a transfer of its stock while the owner is indebted to it, has been established in this case, which justified the defendants in the refusal to transfer of which the plaintiff complains. Both of these claims of the defendants are certainly very strongly supported by the authorities they have cited. But it is not necessary for us to decide upon their validity, for we are clearly of opinion that, as this case is presented to us, the provision in the certificate of Smith, on which the defendants rely to sustain their lien, was binding on him by his acceptance of that instrument, and, if it did not strictly constitute, was tantamount to, an agreement between him and the defendants, that his stock should be subject to his indebtedness and liabilities to them. That provision is a qualification or restriction of the title of Smith to the stock, of which title it was the object of that certificate to furnish the legal evidence, or rather of which the certificate was the consummating act; and, as the muniment of Smith's title, we think that it must be treated as an entire instrument of which the qualification is a part, and that the latter therefore can not be disjoined from it or treated as of no validity. To consider it otherwise than as an agreement would be to disregard the plain intention of the parties, which courts will always, if possible, carry into effect, and to sanction the perpetration of a fraud on the defendants. Smith having received the certificate proffered to him by the defendants with that restriction, neither he or his assignee

should be permitted to deny his assent to it, and that would be sufficient to constitute an agreement.

The expression in Smith's certificate is, that the shares mentioned in it are "transferable at said bank only by him or his attorney, on surrender of the [said] certificate, subject nevertheless to his indebtedness and liability at the bank, according to the charter and by-laws of said bank." There is nothing in the charter or by-laws which gives to the defendants a lien upon the shares of a stockholder for his indebtedness or liability to them; and the plaintiff thereupon insists that the present indebtedness of Smith is not embraced in the certificate, because the only indebtedness to which, by its terms, it makes the stock subject, is one which is made so by the charter or by-laws. Without going into an extended criticism of the language of this certificate, we are of the opinion that this is not its just construction; but that its true meaning is, that the shares should be transferable according to the charter and by-laws, subject nevertheless to the indebtedness of Smith of whatever nature; as if the phrase "according to the charter and by-laws" had been inserted immediately after the word "transferable," or if the phrase "subject," &c. had been included in a parenthesis, and thus excluded from the preceding expression. The instrument is somewhat awkwardly expressed, and such an arrangement of its language as we have suggested, is necessary, as we think, in order to give it a sensible meaning, while it does no violence to its grammatical construction. We can conceive of no reason which should lead to the introduction of a qualification in it, restricting the transfer of the shares, which would extend only to a particular kind of debts due to the bank; much less to one which would constitute but a very small part of that great amount of indebtedness of which its property would principally consist. The circumstance, also, that the qualification in question would have no operation, at least when the certificate was delivered, militates very strongly against the construction which the plaintiff claims. There are other obvious reasons opposed to that construction, but we do not deem it necessary to pursue this objection further.

The plaintiff further insists, that the provision in question, which subjects the stock of Smith to his indebtedness and liability to the defendants, is invalidated by the statute which declares that "no bank shall make any loan or discount on pledge of its own stock." (Rev. Stat., Tit. 3, § 226.) The object of this law is not very obvious. It would seem that it was not passed for the benefit of the stockholders or creditors of banks, because so far as their interests are concerned, they would be no more exposed to suffer by a loan or discount made on a pledge of the stock of the bank than on any other kind of security. We suppose that the law was dictated by a regard to the general policy which leads to the incorporation of banking institutions, which are supposed to be required, for the special benefit, not of the stockholders, who are presumed to be capitalists, and therefore lenders, instead of borrowers, but of the public who should have occasion for bank facilities and accommodations in their business. It was probably intended as a check on loans to stockholders by which the public generally might be unduly deprived of such facilities and accommodations, if the former, who would naturally have a particular influence with the directors, were allowed to make use of their portion of the capital of the bank for their own benefit, by borrowing it on a pledge of their stock. The directors of banks, whose exclusive business it is to make loans and discounts, and perhaps the banks of which they are the agents, might be amenable to the courts for a violation of this law, if they should disregard its prohibition, as they clearly would be to the legislature; but there would seem to be no sufficient reason why the loan or pledge should be pronounced void. Especially is it questionable, whether it can be treated as invalid, in the absence of any provision in the act declaring that the loan or pledge shall be void, or imposing any punishment for its violation. There is therefore much reason for the claim that the act is only directory. We do not intend, however, to decide this point. We are fully satisfied that the law does not, by fair construction, embrace a case like the present, where paper was discounted by a bank for the benefit of a person who had no interest in the

stock in question, not on a specific pledge of the stock, but on the personal security of a party who was a stockholder and had only previously pledged his stock generally for his future indebtedness or liability to the bank. Such discount can not be said to be made on a pledge of the stock, according to the proper meaning or accustomed acceptation of that phrase. A loan or discount on a pledge of stock, is an expression of mercantile origin, and is understood to mean a loan or discount where the stock of the person, for whose benefit it is made, or that of another, is expressly and specifically pledged at the time for its repayment. It would seem to imply, also, that that should be the only security then given, and we should hardly understand that a loan was made on a pledge of stock where other security was also taken. Still we would not say that the phrase in question would not apply to such a case. From this explanation it is plain, that the discount for the benefit of Coe, on the acceptance of Smith, on which the indebtedness of the latter to the defendants arose, was not made on a pledge of Smith's stock, and that it is not therefore embraced by the terms of the act. That it is not within the mischief which it was designed to remedy is also obvious from what has been said in regard to the object for which it was passed.

Therefore the objections to the defendants' lien ought not to prevail, and judgment is advised in their favor.

In this opinion the other judges concurred.

Judgment advised for defendants.