WILLIAM H. IRELAND *vs.* GLOBE MILLING AND REDUCTION CO.

PROVIDENCE—JULY 12, 1897.

PRESENT: Matteson, C. J., Stiness and Tillinghast, JJ.

Promoters of a corporation entered into an agreement July 27, whereby the stockholders were not to sell their shares of stock therein without having first offered to sell the same to the company ; the corporation was organized August 10, and became authorized to do business August 31. Subsequently a sale of stock was made by a stockholder without an offer of the same to the corporation ; the purchaser sought to have the appropriate transfer made on the books of the company, and the corporation pleaded said agreement in bar ;—

*Held*, that the agreement constituted no defence to the action.

A corporation formed under the provisions of the general law is purely a creature of statute, and only exists, for the transaction of business, when all the statutory requirements have been complied with.

A corporation cannot avail itself of an agreement previously entered into by the

individuals proposing to form the corporation, without showing some new and positive act done by it after its complete organization ratifying the agreement. For breach of such agreement the remedy is against the offending stockholder. A corporation which has accepted the benefit arising from a contract made by its promoters is held to be bound by such contract.

In the organization of corporations a difference exists, as to the effect of omitting requirements of law, between those created by special charter and there have been acts of user, and those formed by individuals under the general law. In the latter case it is only in pursuance of the provisions of the statutes for such purposes that corporate existence can be acquired.

ASSUMPSIT, based on defendant's refusal to transfer on its books certain certificates of shares of its capital stock purchased by plaintiff. Certified from the Common Pleas Division and heard on plaintiff's demurrer to defendant's special pleas in bar.

TILLINGHAST, J.   In the opinion heretofore given in this case[1] it was held that the by-laws of the defendant corporation providing for the right of preëmption of the stock in question was invalid. Since the rendition of that opinion the defendant by leave of court, has filed additional pleas setting up that, by virtue of an agreement entered into on July 27, 1892, between the subscribers to the stock of the then proposed corporation, and also of an agreement between said subscribers and the corporation on August 10, 1892, the stock in question could not be transferred without first giving to the corporation the option of purchase.

Without referring to the voluminous pleadings in detail, it is sufficient to say that the main question now raised thereby is whether the alleged agreements had the effect to bind the plaintiff's vendor, William R. Stearns, who was one of said subscribers, to offer the stock in question to the defendant corporation, at the lowest price at which he was willing to sell, before selling said stock to the plaintiff.

The case shows that, although the defendant corporation was organized at Saco, Maine, on the 10th of August, 1892, under the laws of the State of Maine (see cap. 48, §§ 16–19, printed in connection with our former opinion), as alleged in defendant's pleas, yet that it did not become a corporation, so

---

[1] 19 R. I. 180.

as to be able to transact business, until the 31st of August, 1892, at which time the certificate required by section 19 of said chapter was filed with the secretary of State. And this being so, we fail to see any force in the alleged contract with the corporation prior to that time. In other words, the contract or agreement set up by defendant was made before the corporation was in existence as a legal entity. And it is hardly necessary to argue against the power of a person not in being (if indeed there can properly be said to be such a person) to make a contract. A corporation like the defendant is purely a creature of statute and only exists, for the transaction of business, when all of the requirements prescribed for the creation thereof have been complied with. In Thompson on Corp. vol. 1, § 480, the learned author says : " The corporation must have a full and complete organization and existence as a legal entity before it can enter into any kind of a contract or transact any business." In *Gent* v *Ins. Co.*, 107 Ill. 658, the court says : " That a corporation should have full and complete organization and existence as an entity before it can enter into any kind of a contract or transact any business, would seem to be self-evident. This is unconditionally true, unless the act of incorporation authorizes the corporators to perform acts and enter into contracts to bind the company when it shall be organized. As well say a child *in ventre sa mere* may enter into a contract, or that its parents may bind it by contract. A corporation, until organized, has no being, franchises or faculties. Nor do those engaged in bringing it into being have any power to bind it by contract, unless so authorized by the charter." The Supreme Court of Maine has expressly decided that a corporation like the defendant does not become a corporation until the certificate of the attorney- general be obtained as required by the provisions of said cap. 48, § 19 of the revised statutes of that State. *Richmond Factory Ass'n* v. *Clarke et al.*, 61 Me. 351. See also *Prov. Albertype Co.* v. *Kent & Stanley Co. Lim.*, Index SS. 152 ; *Utley* v. *Tool Co.*, 11 Gray, 141; *Penn Match Co.* v. *Hapgood*, 141 Mass. 148 ; 4 Am. & Eng. Ency. L. 197–9.

It is to be observed, in this connection, that there is a manifest difference, as to the effect of omission of the requirements of the law in the organization of corporations, between a case where the corporation is created by special charter and there have been acts of user, and a case where individuals seek to form themselves into a corporation under provisions of the general law. In the latter case, which is the one before us, it is only in pursuance of the provisions of the statutes for such purposes that corporate existence can be acquired. *Bigelow* v. *Gregory*, 73 Ill. 197.

But defendant contends that the case presented is not that of an agreement between the promoters of a corporation and other parties, but is that of an agreement between the incorporators themselves. But suppose it is ; how does that change the case ? It is then only a contract between the incorporators, or rather the proposed incorporators, individually, and not one of which the defendant can avail itself. And, therefore, even assuming that a contract between said proposed incorporators not to transfer their stock, when obtained, without giving the option of purchase to the corporation, would be binding on them as individuals, yet the only remedy for a breach of such contract would be a personal one against the offending stockholder. Thus in *Carmody* v. *Powers*, 60 Mich. 30, it is held that an agreement with individuals, that when they become incorporated they will give plaintiff a certain amount of paid-up stock, cannot on any rule of law be considered as a dealing with the corporation itself, or as one which would bind the future corporation when organized.

The case of *Vansands* v. *Bank*, 26 Conn. 155, cited by defendant's counsel, is quite different from the case at bar. There the question arose as to whether the bank had a lien on the stock held by the insolvent stockholder for the amount of his indebtedness to the bank. The certificate of stock which he held expressly provided that the shares were subject to the indebtedness of the stockholder to the bank, and the court held that this provision was binding on him by his acceptance of the certificate, such an acceptance being tanta-

mount to an agreement between him and the defendant that his stock should be subject to his indebtedness. The court, in referring to the terms of the certificate, said : "That provision is a qualification or restriction of the title of Smith to the stock of which title it was the object of that certificate to furnish the legal evidence, or rather of which the certificate was the consummating act ; and, as the muniment of Smith's title, we think that it must be treated as an entire instrument of which the qualification is a part, and that the latter therefore cannot be disjoined from it or treated as of no validity. To consider it otherwise than as an agreement would be to disregard the plain intention of the parties, which courts will always, if possible, carry into effect, and to sanction the perpetration of a fraud on the defendants. Smith having received the certificate proffered to him by the defendants with that restriction, neither he nor his assignee should be permitted to deny his assent to it, and that would be sufficient to constitute an agreement." It will be observed that this was a case where the corporation was in existence and fully competent to transact business when the stock was issued and the lien thereon created.

The case of *Waln's Assignee* v. *Bank*, 8 Serg. & Raw. 86, which is specially relied on by defendant, is very similar to the one just cited. There the court found that, by a long usage and course of dealing well known to and acquiesced in by the assignor of the stock in question, the bank had a lien on the stock for the indebtedness to it of its stockholders ; and that the plaintiff, who was the assignee of Waln, and therefore stood precisely in his situation, was bound by the custom, usage and well known understanding, which was tantamount to a contract with the bank, regarding the transfer. In this case, as in the other, it will be seen that there were two parties fully competent to enter into the contract in question.

*McCready* v. *Rumsey*, 6 Duer, 574, is also similar to the cases just referred to, except that there, under the articles of association, no stockholder could transfer his shares while he was indebted to the bank. And the court held that the as-

signee of the stockholder, as his successor and under the statute, took the stock subject to the same liabilities.

*In re Dunkerson*, 4 Biss. 227, is a case where the articles of association expressly authorize the restriction on the sale of the stock, which is contained in the by-law, and hence was properly held to amount to a binding contract between the subscribers and the bank.

*Bank* v. *Laird*, 2 Wheat. 390, is a case where the act of incorporation provided that no stockholder should transfer his stock until his indebtedness to the bank was satisfied, unless the president and directors should direct to the contrary.

In *Stebbins* v. *Ins. Co.*, 3 Paige, 350, also, the act of incorporation prohibits a transfer of stock until the stockholder's liabilities to the corporation are satisfied.

We have examined the numerous other cases cited by defendant's counsel in his elaborate brief bearing upon the questions under discussion, but we do not find that they sustain the position taken. But, even admitting that they do, the decided weight of authority, as well as the better reason, is to the contrary. Even conceding, therefore, that the defendant's contention as to the validity and effect of such an agreement or contract as is set up in its pleas, when made between parties who are competent to enter into it, is correct, yet, as no binding contract and, indeed, no contract at all, is shown to have been made between Stearns and the defendant corporation regarding the restrictions on the transfer of the stock, as claimed, by reason of the fact that the defendant was not capable of making it, the entire defence, in so far as said pleas are concerned, necessarily fails.

It is earnestly insisted by defendant's counsel, however, that the agreement in question, although made before the corporation was in existence, became operative upon the complete organization thereof, by reason of the issuance of stock to the subscribers, including said Stearns.

It is to be observed, incidentally, that the defendant does not allege in its pleas that any ratification of the contract, said to have been made on August 10, 1892, ever took place. But even assuming such an allegation therein, we do not

think it would be of any avail, so long as there is no vote of the corporation in any way relating thereto ; and we do not think that the mere act of the corporation in issuing the certificates of stock to Stearns, after the corporation was in fact in existence, amounted to a ratification by it of a contract made simply between the subscribers to the stock prior to the time when the corporation became a legal entity. In order to avail itself of the agreement alleged to have been made by the incorporators with the corporation before the existence of the corporation, the defendant must, as argued by plaintiff's counsel, show some new and positive act done after its complete organization ratifying said alleged agreement.

The case at bar, in which the defendant seeks to avail itself of an agreement made before its incorporation, differs very materially from the case of a corporation which has accepted the benefit arising from a contract made by its promoters and is held to be bound by such contract.

The English authorities hold that a corporation cannot adopt or ratify a contract made before its incorporation. *Kelner* v. *Baxter*, L. R. 2 C. P. C. 174 ; *In re Northumberland*, etc., L. R. 33 Ch. Div. 16.

This rule has been followed in Massachusetts. In *Abbott* v. *Hapgood*, 150 Mass. 252, Knowlton, J., says : "If a contract is made in the name and for the benefit of a projected corporation, the corporation after its organization cannot become a party to the contract even by adoption or ratification of it." "Such a contract must derive its vitality from the meeting of minds when both parties are in existence. Until then it can be nothing more than an offer by one party." *Penn. Match Co.* v. *Hapgood*, 141 Mass. 148.

Having thus come to the conclusion that the agreement set up in the defendant's pleas is invalid, and that the plaintiff is not bound thereby, any further consideration of the case at this time becomes unnecessary. We desire to add, however, that it has been brought to our notice in the amended pleadings, and also in the defendant's new brief, that there are certain other statutes of Maine in addition to cap. 46, § 6, relied on in our former opinion, relating to the

power of corporations to pass by-laws. And the defendant now claims that, under said statutes and the decisions of the Supreme Court of Maine, the by-law aforesaid is valid. As the case is only before us on the amended pleadings, however, and as this question is not discussed in the plaintiff's brief, we cannot now decide it. In view, however, of the importance of the question and of the newly discovered statute aforesaid, a motion for reargument of the original question would be entertained by the court.

*William H. Sweetland*, for plaintiff.