Jerome J. KATZ et al.

v.

John E. PRETE et al.

No. 80–262–Appeal.

Supreme Court of Rhode Island.

April 13, 1983.

DeSano & Thibodeau, Alfred G. Thibodeau, Providence, for plaintiffs.

Nugent & Nugent, J. Joseph Nugent, Jr., Providence, William A. Martin, North Providence, for defendants.

## OPINION

WEISBERGER, Justice.

This is an appeal by the plaintiffs from the denial of their motion for a directed verdict on their action for contribution. The defendants cross-appeal from the denial of a directed verdict on their counterclaim and the granting of the plaintiffs' motion for a new trial. We sustain the plaintiffs' appeal, and deny and dismiss the appeal of the defendants.

The relevant undisputed facts are as follows. In 1973, plaintiff Jerome Katz and defendant John Prete decided to enter together into a picture-framing business, which was to be incorporated and called Michelle Galleries, Inc. (Michelle). Both men agreed to be equal owners of the busi-

ness, with each receiving 50 percent of the company's stock.[1] The operating capital for the new corporation was supplied by People's Trust Company on August 2, 1973, in the form of a $15,000 loan. Mr. Katz, as treasurer of Michelle, signed a $15,000 promissory note to secure said loan. He did this even though the company had not yet been formally incorporated. Furthermore, Mr. Katz, Mr. Prete, and their respective wives signed, in their individual capacities, a continuing guaranty for the payment of this note, and any additional amounts that might be advanced to Michelle, in the event of a default. On November 12, 1973, a subsequent $5,000 loan was advanced from People's Trust to Michelle and evidenced by a second promissory note. This, like the prior note, bore Mr. Katz's signature in his official capacity as treasurer of Michelle.

The corporation went out of business in August 1974. According to Mr. Katz (who was a certified public accountant and handled the financial affairs of the corporation), the loans from People's to Michelle had been renewed or extended and therefore were still outstanding at the time the parties decided to bring their business venture to a close. The plaintiffs contend that although Michelle had made some interest payments on the loan, Mr. Katz had made the majority of such payments.

Shortly after Michelle ceased its operations, the bank began to exert pressure upon Mr. Katz to satisfy the outstanding portion of the loan. He did so by executing, in his own name, a new promissory note in the amount of $18,762.52, which was secured by stock that Mr. Katz owned in various companies other than Michelle. The bank eventually obtained payment of that loan in January 1978 by selling the stock pledged by Mr. Katz. Mr. Prete contends that although he signed the guaranty contract, he was informed by Mr. Katz that

such a signing was a "formality" required by banks when businesses are established. He testified that he was not aware that the document of guaranty was part of a loan transaction. However, he was aware of the loan in question and of the corresponding payments that were made thereon. It was his belief that he would work without salary for the corporation, running the day-to-day affairs in return for 50 percent of the stock,[2] and that plaintiff would keep the corporate books and supply the funds needed by the company.

At the first corporate organizational meeting, Jerome Katz, as president and treasurer of Michelle, made a subscription agreement for one hundred shares of the company's capital stock in exchange for a $100 payment. John Prete, as vice president and director of Michelle, signed a waiver of notice concerning the first directors' meeting. Although Mr. Prete does not concede being present at the first directors' meeting, the minutes of the meeting reflect that Prete voted, as did the other two directors, to authorize issuance of stock to Mr. Katz in accordance with his offer to subscribe. However, no stock certificates were ever formally issued. Thereafter, plaintiff attempted to cancel his subscription by accepting a corporate check from Michelle for the $100 stock subscription price. Mr. Katz testified that he therefore believed this cancellation of subscription made him and Mr. Prete equal owners of the corporation, in spite of the fact that the purported cancellation was never recorded in the corporate records.

On August 9, 1975, plaintiffs Jerome and Gertrude Katz filed a complaint requesting contribution from defendants as coguarantors for half the payment of the promissory note. The defendants filed an answer to plaintiffs' complaint, denying the essential

1. The existence of this agreement was conceded by Mr. Katz and Mr. Prete and was corroborated by three other witnesses who generally testified that both men indicated in their respective conversations with third parties that they were partners.

2. On cross-examination Mr. Prete conceded that consideration for his ownership interest in Michelle Galleries, Inc., consisted of signing a People's Bank loan document for $15,000 in August of 1973.

allegations therein, and also filed a counterclaim in which they alleged, inter alia, that plaintiff Jerome Katz had intentionally misrepresented the situation to defendants in order to defraud them of their property, labor and other interests in the corporation. At the conclusion of a jury trial, a Superior Court justice directed a verdict in favor of plaintiffs on defendants' counterclaim, but denied plaintiffs' motion for a directed verdict on their contribution claim. The jury returned a verdict for defendants on plaintiffs' contribution claim. Thereafter plaintiffs filed a motion for a new trial. That motion was granted on March 27, 1980. The plaintiffs appeal from the denial of their motion for a directed verdict on their claim for contribution. The defendants appeal the granting of the directed verdict on their counterclaim and the granting of plaintiffs' motion for a new trial.

■ The defendants contend that the trial justice was incorrect in granting plaintiffs' motion for a directed verdict on defendants' counterclaim. We disagree. When reviewing the decision of a trial justice on a motion for a directed verdict, this court must utilize the same standard that the trial justice applies. *Rickey v. Boden,* R.I., 421 A.2d 539, 543 (1980). Thus, this court must view the evidence in the light most favorable to the party against whom the motion is made. Such party must be given the benefit of all reasonable and legitimate inferences that may properly be drawn from the evidence without sifting or weighing such evidence or determining the credibility of witnesses. *Fox v. Allstate Insurance Co.,* R.I., 425 A.2d 903, 905 (1981); *Evans v. Liguori,* 118 R.I. 389, 394, 374 A.2d 774, 776 (1977); *Hamrick v. Yellow Cab Co.,* 111 R.I. 515, 522, 304 A.2d 666, 671 (1973). If after so viewing the evidence, issues exist upon which reasonable minds might draw conflicting conclusions, the trial court has no alternative but to submit such issues to the jury. *Fox v. Allstate Insurance Co.,* R.I., 425 A.2d at 905; *Rickey v. Boden, R.I.,*

421 A.2d at 543; *Evans v. Liguori,* 118 R.I. at 394, 374 A.2d at 776.

■ In count II of their counterclaim, defendants appear to have alleged an action in tort for deceit. *See* Prosser, *Handbook of the Law of Torts,* § 105 at 685–86 (4th ed. 1971). To recover on such a claim, defendants bore the burden of proving that Katz, in making the statement at issue, knew it to be false and intended to deceive, thereby inducing defendants to rely on the statements to their detriment. *Halpert v. Rosenthal,* 107 R.I. 406, 412, 267 A.2d 730, 733 (1970); *Cliftex Clothing Co. v. DiSanto,* 88 R.I. 338, 344, 148 A.2d 273, 275 (1959); *see Conti v. Walter Winters, Inc.,* 86 R.I. 456, 459, 136 A.2d 622, 623–24 (1957).

The defendants allege two material misstatements of fact upon which, they argue, they relied to their detriment. The first concerns the undisputed statement by Mr. Katz that he and Mr. Prete would be equal owners of the corporation when in fact no stock was issued to Mr. Prete. The second involves Mr. Katz's purported statement that the guaranty defendants signed was a formality required by banks when new businesses are established.

■ Regarding the former statement, we believe that certificates of stock are but mere evidence of ownership. Thus issuance and delivery of stock certificates are not essential to establish ownership, which may be inferred from the acts and conduct of a party. *Pacific National Bank v. Eaton,* 141 U.S. 227, 233–34, 11 S.Ct. 984, 985, 35 L.Ed. 702, 704–05 (1891); *Golden v. Oahe Enterprises, Inc.,* 90 S.D. 263, 273, 240 N.W.2d 102, 108–09 (1976); *cf. Talbot v. Talbot,* 32 R.I. 72, 92–93, 78 A. 535, 543 (1911) (lack of decedent's endorsement on stock certificate not fatal to intent to deliver certificates to trustee). Therefore, the verbal agreement between the two men was sufficient as a matter of law to establish Mr. Prete's entitlement to half the stock in the corporation.[3] *See DiChiara v. Calvo,* 32 A.D.2d

---

**3.** The parties did not raise the issue of the Statute of Frauds. Had they done so, G.L.1956

(1969 Reenactment) § 9–1–4 would not have been applicable, for the oral agreement was

538, 538, 299 N.Y.S.2d 634, 635 (1969). Thus, in light of their verbal agreement, Mr. Prete could have compelled the issuance of stock had he so desired. *See generally* 12A Fletcher, *Cyclopedia of the Law of Private Corporations,* § 5634 at 334–37 (rev. perm. ed. 1972) (specific performance may be used to compel the sale of stock in a closely held corporation).

The fact that Mr. Prete was not listed either as a subscriber for corporate stock or as a stockholder in the books of the corporation did not mean per se that he could not have been considered a stockholder in the corporation. *See Gibson v. Oswalt,* 269 Mich. 300, 308, 257 N.W. 825, 828 (1934); *cf. Peninsula Leasing Co. v. Cody,* 161 Mich. 604, 611, 126 N.W. 1053, 1056 (1910) (relation of a member in a corporation may arise out of mutual dealings between individual and corporation; defendant entitled to shares of corporate stock despite the fact that no sale of capital stock in ordinary way had occurred).

Therefore, based upon the undisputed testimony that Mr. Prete was half owner of the corporation, pursuant to the verbal agreement, there is only one conclusion that reasonable persons could reach: that the two men were equal owners of the corporation. Whether or not the certificates of stock were formally issued or whether or not the stock subscription was formally entered on the books of the corporation is not dispositive in light of the verbal agreement.

■ With respect to the second alleged material misstatement of fact, reasonable persons could not conclude that defendants were fraudulently induced to sign the general guaranty agreement. At trial, Mr. Prete testified that he questioned Mr. Katz about the words "General Guaranty, People's Trust Company" and was told "this was a formality [t]hat all banks require when a new business is starting * * *." However, even if one assumes that Mr. Katz made the statement in precisely the terms described, a conclusion of fraud or

deception is not supported. Indeed, even drawing all inferences therefrom favorable to defendants, a reasonable trier of fact would be compelled to reach the conclusion that a bank would require such a guaranty before loaning money to a newly formed corporation without significant assets, stated capital, or credit. The characterization of the guaranty as a "formality" would in no way diminish the inevitability of such a conclusion. Mr. Prete did not testify that he failed to read or understand the document. Accordingly, in light of the foregoing reasons, the trial justice was correct in granting plaintiffs' motion for a directed verdict on defendants' counterclaim.

■ We now turn to the issue of whether the trial justice was correct in denying plaintiffs' motion for a directed verdict on their contribution claim. The plaintiffs contend, without contradiction, that defendants signed the guaranty contract and that absent fraud, defendants were liable for contribution in the amount of one half the sums paid by plaintiffs to the bank. We agree. The general rule is that when one person guarantees the payment of an obligation and one of the guarantors is compelled to pay the entire sum, that guarantor has a right to contribution from other co-guarantors. This right is implied by law and governed by equitable principles. *Appleford v. Snake River Mining, Milling & Smelting Co.,* 122 Wash. 11, 15, 210 P. 26, 28 (1922). Given the equitable nature of the doctrine of contribution in these circumstances, fraud by the party seeking contribution, which induced defendant to become a co-obligor, may defeat recovery. *See Bennett v. Bowen,* 65 Utah 444, 238 P. 240 (1925). Here, however, we find no evidence of misrepresentation or fraud which may have induced defendants to enter into the guaranty contract.

■ The defendants' other defenses to the guaranty contract are equally unavailing. They argue that at the time the loan transaction was consummated, Mi-

capable of being performed within the space of one year from the making thereof.

chelle had not been formally incorporated. Therefore, it did not have the power to authorize Mr. Katz, as its treasurer, to bind the corporation in the loan transaction. They contend instead that Mr. Katz individually became liable on the loan rather than the corporation. As a general rule, however, the obligation of a guarantor does not depend on whether the principal is with or without authority to enter into the underlying obligation. Thus, the guarantor of a principal who is incapable of contracting is nonetheless liable despite the fact that the principal may not be so bound. This rule has been held to apply when the principal obligation was executed by a corporation without authority, where a corporate officer was the guarantor of the obligation. *Department of Banking of Nebraska v. Keeley,* 183 Neb. 370, 372, 160 N.W.2d 206, 207 (1968).

■ The defendants' assertion that Mr. Katz incurred individual liability because the corporation had no legal existence is unpersuasive. Admittedly, prior Rhode Island cases on this point are somewhat less than crystal clear. *See Robinson v. Puritan Stores, Inc.,* 48 R.I. 131, 132–33, 136 A. 243, 243–44 (1927); *Ireland v. Globe Milling and Reduction Co.,* 20 R.I. 190, 195–96, 38 A. 116, 118 (1897). Nonetheless, we believe that the majority American rule is sound doctrine. That rule holds that a preincorporation contract may be adopted, accepted, or ratified by a corporation when properly organized, resulting in corporate liability on the contract. *Framingham Savings Bank v. Szabo,* 617 F.2d 897, 898 (1st Cir.1980); 1 Fletcher, *Cyclopedia of the Law of Private Corporations,* § 207 at 539 (rev. perm. ed. 1974); *see, e.g., Langendorfer v. Morse Oil Co.,* 115 Conn. 706, 706–07, 161 A. 93, 94 (1932); *Interstate Folding Box Co. v. La-Mode Garment Manufacturing Co.,* 301 Ill. App. 283, 288–89, 22 N.E.2d 769, 771 (1939); *K & J Clayton Holding Corp. v. Keuffel & Esser Co.,* 113 N.J.Super. 50, 53, 272 A.2d 565, 566–67 (1971). Therefore, there is no question that Michelle, by accepting the loan and making payments to the bank on that loan (according to defendant Prete's own testimony), impliedly adopted or ratified the initial loan transaction. Thus, Michelle did in fact become the principal obligor under the loan contract.

■ The defendants' contention that there was a failure of consideration is without merit. When a corporate officer agrees to be liable for a debt of the corporation, it is not necessary for consideration to move to the officer personally. It is enough if the corporation receives the consideration. 3A Fletcher, *Cyclopedia of the Law of Private Corporations,* § 1119 at 169–70 (rev. perm. ed. 1975).

■ Lastly, the defendants argue that they were discharged because they received no notice of the additional loan transaction. This contention is unpersuasive. The defendants signed a continuing guaranty, which by its express terms relieved the bank of any requirement of giving notice to the defendants. Such terms in a continuing guaranty are valid and enforceable. *See, e.g., Fidelity National Bank v. Melo,* 366 So.2d 1218, 1221 (Fla.Dist.Ct. App.1979).

In denying the motion for directed verdict and in his instructions to the jury, the trial justice adverted to certain factual issues which required resolution. Upon examination, however, we are of the opinion that none of the factual issues submitted to the jury were in dispute. The parties were in disagreement before the Superior Court and before us only in respect to the legal conclusions to be drawn from essentially undisputed facts. Therefore, there were no genuine issues of fact to submit to the jury in this case.

Since we have found that the trial justice erred with respect to the denial of the plaintiffs' motion for a directed verdict on their contribution claim, there is no need to reach the issue relating to the granting of the plaintiffs' motion for a new trial. For the foregoing reasons, the plaintiffs' appeal is sustained, and the appeal of the defendants is denied and dismissed. The papers in

the case may be remanded to the Superior Court for entry of judgment consistent with this opinion.

KELLEHER, J., did not participate.